IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| **WILLIAM SAKI,** *et al.*,<br>    *Appellants,*<br><br>v.<br><br>**CHARLES L. NORMAN,** *et al.*,<br>    *Appellees.* | Case No.: 26-3495 |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
JUDGE DAN AARON POLSTER
NO. 1:26-CV-1148

**BRIEF OF APPELLANTS WILLIAM SAKI, JEFFREY WONSER, AND PATRICK CORRIGAN**

Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Appellants William Saki, Jeffrey Wonser, and Patrick Corrigan*

**CORPORATE DISCLOSURE STATEMENT**

Appellants William Saki, Jeffrey Wonser, and Patrick Corrigan are not a subsidiary or affiliate of a publicly owned corporation, and no corporation has a substantial financial interest in the outcome of this litigation.

**TABLE OF CONTENTS**

Corporate Disclosure Statement ................................................................................ ii

Table of Authorities .................................................................................................. iv

Jurisdictional Statement .............................................................................................1

Statement of the Case.................................................................................................1

Issues Presented .........................................................................................................3

Summary of Argument................................................................................................4

Standard of Review.....................................................................................................5

Law & Argument ........................................................................................................6

   I.   The District Court committed reversible error by dismissing Appellants'
       complaint *sua sponte*. ........................................................................................6

      A.   Because its violated the party-presentation principle, the District Court
           committed reversible error by dismissing Appellants' complaint...........6

      B.   Because Appellants were not required to file their action as a motion to
           enforce a consent judgment, the District Court committed reversible
           error by dismissing Appellants' complaint..............................................8

      C.   Because the Court's order addressed none of Appellants' claims,
           dismissal was not harmless error. .........................................................12

  II.  The District Court erred in denying Appellants' motion for a preliminary
       injunction. .........................................................................................................12

      A.   Because the BMV concedes that the *Zucco* guidelines are intended to
           ensure speech is "not offensive," they are neither reasonable nor
           viewpoint neutral. ................................................................................14

      B.   Because Appellants were likely to succeed on the merits, the remaining
           prongs were satisfied.............................................................................19

 III.  The District Court erred in denying Appellants' request for attorney's fees.
       .........................................................................................................................20

Conclusion ...............................................................................................................24

Certificate of Compliance ........................................................................................24

Certificate of Service ...............................................................................................24

Addendum...................................................................................................................1

## TABLE OF AUTHORITIES

**Cases**

*Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transportation*,
　978 F.3d 481 (6th Cir. 2020) ................................................................ 5, 18

*Arnold v. Ghee*, 12 F. App'x 313 (6th Cir. 2001) .............................................. 10, 11

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) ............................ 12, 13, 19

*Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608 (6th Cir. 2013) ................................22

*Brandenburg v. Ohio*, 395 U.S. 444 (1969)................................................................17

*Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548 (6th Cir. 2012). 4, 6, 7, 8

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ............................................... 14, 16

*Cohen v. California*, 403 U.S. 15 (1971).....................................................................20

*Deja Vu v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*,
　421 F.3d 417 (6th Cir. 2005)...................................................................................22

*Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123 (1992) ........................17

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir.
　1994)..........................................................................................................................20

*Hescott v. City of Saginaw*, 757 F.3d 518 (6th Cir. 2014)........................... 5, 21, 23

*Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552 (6th Cir. 2017) .....1

*In Re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718 (6th Cir.
　2025).............................................................................................................................6

*Matal v. Tam*, 582 U.S. 218 (2017) ................................................................ 5, 18, 19

*Navajo Nation v. San Juan Cnty.*, 929 F.3d 1270 (10th Cir. 2019)........................5, 9

*Nixon v. N. Loc. Sch. Dist. Bd. of Educ.*, 383 F. Supp. 2d 965 (S.D. Ohio 2005)...20

*Northcross v. Bd. of Ed. of Memphis City Schs.*, 611 F.2d 624 (6th Cir. 1979)......23

*Sole v. Wyner*, 551 U.S. 74 (2007)..............................................................................21

*Thompson v. DeWine*, No. 2:20-CV-2129, 2020 WL 2614447 (S.D. Ohio May 22,
　2020)..........................................................................................................................19

*Wonser v. Norman*, No. 25-3509, 2026 WL 1230540 (6th Cir. May 5, 2026) .. 2, 23

**Statutes**

28 U.S.C. § 1291 ............................................................................................................1
28 U.S.C. § 1331 ............................................................................................................1
42 U.S.C. § 1988 .................................................................................................... 21, 22

**Constitutional Provisions**

U.S. Const., Amend. I .......................................................................................... passim

## JURISDICTIONAL STATEMENT

There are no jurisdictional impediments to the Court hearing this case:

a)    The district court had subject-matter jurisdiction to hear Appellants' complaint under 28 U.S.C. § 1331 because its allegations of First and Fourteenth Amendment violations raised a federal question.[1]

b)    This court has subject-matter jurisdiction under 28 U.S.C. § 1291 because the district court entered a final, appealable order on May 29, 2026. Although that order dismissed the case without prejudice, this Court retains jurisdiction because Appellants have elected "to stand on the complaint as dismissed." *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 558 (6th Cir. 2017).

c)    Because they filed their notice of appeal from that order on May 31, 2026—within the 30-day limit established under Fed. R. App. P. 4(a)(1)(A)—Appellants timely appealed.

d)    The order appealed from disposed of all claims against all Defendants.

## STATEMENT OF THE CASE

In 2001, the Ohio Bureau of Motor Vehicles settled a First Amendment lawsuit alleging that it gave its censors "unbridled discretion" to reject applications for vanity license plates with an agreement to clarify its standards for approving or rejecting messages on vanity license plates. *Zucco v. Caltrider*, No. 2:01-cv-01270 (S.D. Ohio). The standards adopted as part of that settlement permitted it to reject messages only for three reasons—if it "[c]ontains words, combinations and/or phrases (in any language and when read either frontward or backward) that":

1.    "are profane (that is, swearwords or expletives), obscene, sexually explicit, or scatological."

---

[1] Complaint, ECF #1, PageID #23–25.

2. "are so offensive that they could reasonably be expected to provoke a violent response from viewers without additional comment."

3. "advocate immediate lawlessness or advocate lawless activities."[2]

Since then, First Amendment law has meaningfully evolved, and Appellants William Saki and Jeffrey Wonser have been working to bring the BMV's vanity-plate program in line with those developments. While this Court rejected Mr. Wonser's efforts to obtain a license plate reading "F46 LGB" on procedural grounds, *Wonser v. Norman*, No. 25-3509, 2026 WL 1230540 (6th Cir. May 5, 2026), Mr. Saki was able to obtain a plate reading "GAY" through a consent judgment that at least limited the BMV's authority to reject license plates based on the content of their messages. ECF #8, *Saki v. Norman*, No. 1:25-cv-01893 (N.D. Ohio).

Following that judgment, both attempted to register new license plates, but both were rejected, in violation of both the First Amendment and the *Saki I* consent order, leading to the filing of the Complaint[3] in this action, along with a motion for a preliminary injunction.[4] They were joined by Appellant Patrick Corrigan, whom the BMV turned away when he requested a license plate reading "MAFIA."

---

[2] Special Screening Guidelines, ECF #2-56, PageID # 2204.

[3] Complaint, ECF #1.

[4] Pl. Mot. for Prelim. Inj., ECF #2.

Shortly after those filings, the BMV opposed the requested preliminary injunction, arguing that it was allowed to restrict the combinations of letters and numbers on vanity license plates to ensure they are "not offensive."[5] The District Court held a hearing two days later, where it ordered Appellees to issue the plate Mr. Wonser had requested and at least reconsider Mr. Saki's and Mr. Corrigan's applications using narrower criteria. Despite granting that preliminary relief, the District Court then announced that it was denying the motion for injunctive relief and dismissing the entire action *sua sponte*, citing grounds that neither party had briefed, and that it was refusing to award Appellants any attorney's fees spent obtaining that relief, based on its conclusion that they should have filed the lawsuit as a motion to enforce the *Saki I* judgment instead.

Appellants objected that the Court's proposed action failed to address the vast majority of the claims and relief they had requested, but the District Court was unmoved. It declared the case closed and invited Appellants to appeal.[6]

### ISSUES PRESENTED

1. If a trial court is considering dismissing an action, it generally must provide clear notice and limit itself to the issues the parties themselves have presented. Here, the District Court dismissed the Complaint with no notice,

---

[5] Opp. to Mot. for Prelim. Injunction, ECF #6, PageID #2494.

[6] Transcript, ECF #13, PageID #3953 ("You can do what you want. This case is done, Mr. Bardwell. You want to appeal, appeal.").

based on arguments that the parties had never raised or briefed. Were Appellants entitled to notice and an opportunity to be heard on those issues?

2.  A plaintiff injured by a defendant after the parties have resolved prior litigation may elect to enforce a judgment or initiate a new action. Here, the District Court dismissed this action because it believed it should have been brought instead as a motion to enforce a consent judgment in *Saki I*. Should the Complaint have been dismissed because non-parties to *Saki I* sought relief that *Saki I* never granted?

3.  Whatever the forum, government speech restrictions must be at least viewpoint neutral, and giving offense is a viewpoint. Appellees concede that the *Zucco* guidelines are designed to ensure no one gives offense. Are *Zucco* guidelines viewpoint neutral?

4.  A district court may not deny a prevailing party attorney's fees in a Section 1983 case except in special circumstances, which this Court has never found. The District Court denied Appellants attorney's fees because it closed the case quickly, because one of them had obtained attorneys' fees in a previous case, and because they could have framed their case differently. Are those circumstances special enough to justify the circuit's first-ever disentitlement to attorney's fees?

## SUMMARY OF ARGUMENT

As laid out below, Appellants are entitled to reversal for multiple,

independent reasons:

1.  First, the District Court erred when it dismissed the entire action sua sponte, with no notice to the parties, on grounds that the parties had never addressed and that were contrary to law. A District Court must give reasonable notice to the plaintiff before dismissing a complaint, and it may not simply do so on grounds that it has dreamed up itself without allowing any briefing. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 558 (6th Cir. 2012). Here, the District Court did both.

2.  Second, the District Court may not prohibit the Plaintiff in one case from bringing a new case to vindicate subsequent injuries or limit him to merely enforcing the order from the first case, especially when he is

seeking relief that the first case did not provide. *Navajo Nation v. San Juan Cnty.*, 929 F.3d 1270 (10th Cir. 2019). Again, the District Court did both, dismissing all claims by all Appellants because one of them had previously litigated a similar issue.

3.  Third, the District Court erred by finding that because they are designed to ensure that speech is "not offensive," the Zucco guidelines are reasonable and viewpoint neutral. This Court and the Supreme Court require a far more exacting inquiry into reasonableness and explicitly reject offense-prevention as a viewpoint-neutral framework. *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transportation*, 978 F.3d 481, 500 (6th Cir. 2020) (quoting Matal v. Tam, 582 U.S. 218, 220 (2017)) ("[G]iving offense is a viewpoint."). That error infected its conclusion regarding Appellants' likelihood of success on the merits and then trickled down to its analysis of the remaining preliminary-injunction factors.

4.  Finally, the District Court also erred by granting Appellants at least some of the relief they were seeking but then refusing to award them attorney's fees as a prevailing party. Those fees are effectively mandatory, except in the face of "special circumstances" that this Court has never recognized. *Hescott v. City of Saginaw*, 757 F.3d 518, 523 (6th Cir. 2014). But the District Court refused to allow fees based on four not-so-special circumstances, none of which appear to have ever before been endorsed by any court.

## STANDARD OF REVIEW

While it normally reviews the *sua sponte* dismissal of a complaint under an abuse of discretion standard, in cases like this—where legal conclusions are intertwined with the dismissal, this Court will "review those conclusions de novo." *Doe v. Oberlin Coll.*, 60 F.4th 345, 351 (6th Cir. 2023).

Page 5 of 24

## LAW & ARGUMENT

I.    **The District Court committed reversible error by dismissing Appellants' complaint *sua sponte*.**

    A.    **Because it violated the party-presentation principle, the District Court committed reversible error by dismissing Appellants' complaint.**

"Federal courts adhere to the principle of party presentation. … Because courts are 'essentially passive instruments of government,' we rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'" *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026). "[T]he principle of party presentation sets a 'very high bar' for addressing an issue that neither party raised, … and that bar is cleared only 'in exceptional cases or particular circumstances' or when 'the rule would produce a plain miscarriage of justice.'" *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 726 (6th Cir. 2025).

The rule is of particular importance when a court seeks to dispose of a case entirely. For instance, in *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 558 (6th Cir. 2012), a bank Chase sought a declaratory judgment that Cleveland's separate lawsuit against it was preempted by federal law. The district court denied the city's motion to dismiss for lack of subject-matter jurisdiction but then dismissed the case without prejudice, *sua sponte*, holding that the bank had not demonstrated irreparable harm arising from the other lawsuit and was therefore not

Page 6 of 24

entitled to an injunction—an issue neither party had briefed. This Court reversed, holding that

> Neither party had briefed the issue of whether Chase Bank had satisfied the requirements for an injunction, because neither party was on notice that the court would address that issue. Before dismissing a complaint sua sponte, even if the dismissal is without prejudice, the court must give notice to the plaintiff.

*Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 558 (6th Cir. 2012).

This case presents largely parallel facts. The parties had briefed the issue of whether Appellants had satisfied the requirements for an injunction, but they had not briefed any grounds for dismissing the case at the pleading stage, including the question that the District Court apparently treated as dispositive: that Appellants "should have filed a motion to enforce" the *Saki I* consent judgment rather than filing a new lawsuit.[7] Nonetheless, the District Court unilaterally decided "to treat this new case as if [they] had done that," denying their motion for injunctive relief, ordering the BMV to comply with the consent judgment, and dismissing all claims by all Appellants without notice.[8] The District Court announced that the case was

---

[7] Transcript, ECF #13, PageID # 3938.

[8] Although the dismissal was technically without prejudice, the District Court warned Appellants against refiling it: "[T]his case is concluded, and I want—I don't want—I don't want a *Saki 3* or a reincarnation of some new case. Okay?" Transcript, ECF #13, PageID # 3955.

"over," did not provide the parties to address any perceived deficiencies, and entered judgment for Appellees two days later.[9]

In other words, the district court did exactly what *Chase Bank* forbids: it went outside the parties' presentations of the case, found its own wrong to right, and shut down the entire case without providing anyone adequate notice or an opportunity to be heard on why doing so would be an error. But this Court could not have been any clearer in prohibiting this course of conduct: "Before dismissing a complaint sua sponte, even if the dismissal is without prejudice, the court must give notice to the plaintiff." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 558 (6th Cir. 2012).[10]

The District Court did not give that notice to the plaintiff, and dismissal was therefore reversible error.

### B. Because Appellants were not required to file their action as a motion to enforce a consent judgment, the District Court committed reversible error by dismissing Appellants' complaint.

Injured by a violation, a party to a consent decree may move to enforce its terms or initiate a new action "to recover on the basis of beneficiary rights which it

---

[9] Order, ECF #9, PageID #3925.

[10] In doing so, the District Court repeated error it required this Court to address in *Doe v. Oberlin Coll.*, 60 F.4th 345, 357 (6th Cir. 2023) (SUHRHEINRICH, J., concurring) ("The court dismissed a claim alleging a lack of due process without providing the minimal process that was due; the irony of that speaks for itself. ").

confers." *Jones v. Loc. 520, Int'l Union of Operating Eng'rs*, 603 F.2d 664, 666 (7th Cir. 1979). Naturally, a party seeking relief beyond what the consent decree guarantees is equally entitled to bring a new action. *Barfus v. City of Miami*, 936 F.2d 1182, 1188 (11th Cir. 1991) ("The issue sought to be litigated here was not involved in the consent decree. Thus, it cannot be the case that these [parties] waived their right to bring a separate Title VII action.").

For instance, in *Navajo Nation v. San Juan Cnty.*, 929 F.3d 1270 (10th Cir. 2019), the Navajo Nation brought Section 1983 claims against a county alleging that its voting districts—established decades earlier in consent decree resolving the federal government's allegations of Voting Rights Act violations—violated the Equal Protection Clause. The district court denied a motion to dismiss on grounds that the new action should have been brought instead as a motion in connection with the consent decree, and the Tenth Circuit affirmed, holding that the Navajo Nation was free to bring a new complaint, both because it was not a party to the original consent decree and because it was not seeking relief inconsistent with its terms.

So even if Appellants had all been parties to the *Saki I* consent decree, and even if they were all merely trying to enforce its terms, they would still have been within their rights to bring a new action to recover on the basis of the beneficiary

rights it conferred, and the District Court was therefore incorrect in concluding that they "should have filed a motion to enforce" that decree instead.

That conclusion only becomes clearer when the false assumptions are stripped away. Neither Mr. Wonser nor Mr. Corrigan was a party to the consent decree or identified its beneficiaries, so they could not have filed a motion to enforce its terms. And even if Mr. Saki had relied on his status as a party to file such a motion, it could not have led to the relief he seeks here, which asks the Court to require the BMV to approve vanity-plate applications as required by the First Amendment, not as required by the *Zucco* guidelines.

This Court has, in an unpublished decision addressing different circumstances, affirmed dismissal of a complaint that was in fact, more akin to a request to enforce a consent decree. In *Arnold v. Ghee*, 12 F. App'x 313, 315 (6th Cir. 2001), a party to a class-action consent decree filed a Section 1983 claim asking to hold the Ohio Adult Parole Authority in contempt for violating the decree during his parole hearing. The district court dismissed the claim and this Court affirmed, holding that because the plaintiff was essentially alleging a violation of the consent decree in the earlier case, it would have been "more appropriate" to seek enforcement in that same case:

> Arnold is a member of the *Kellogg* class. The district court in the
> *Kellogg* case retained jurisdiction to enforce the provisions of the
> consent decree entered into between the parties. Under these

Page 10 of 24

circumstances, Arnold should seek relief through the *Kellogg* case so that enforcement of the consent decree may be addressed by one district court judge.

But that logic does not extend to this case: (1) It is not a class action; (2) Mr. Wonser and Mr. Corrigan were not parties to *Saki I*; and (3) Appellants filed the case so to ensure it would nonetheless would still be addressed by the same district court judge.

And again, there is a more important reason *Arnold* doesn't apply here: Appellants are *not* seeking enforcement of the *Saki I* consent decree. That order directed the BMV to "ensure that it adheres to the Special License Plate Screen Guidelines set forth in the settlement reached in *Zucco v. Caltrider*," which is the *opposite* of what Appellants requested here. Indeed, the Complaint repeatedly and explicitly alleges that those guidelines are "unconstitutional"[11] and requests an order "barring Defendants from enforcing [them]."[12] So even when a district court enjoys some discretion to recharacterize a filing on its docket, that discretion does not stretch so far as recharacterizing up as down and black as white.

Because Appellants were either not parties to the *Saki I* consent judgment, were not seeking to enforce its terms, or both, the District Court erred in dismissing the complaint based on their failure to file it as a motion to enforce.

---

[11] Complaint, ECF #1, ¶¶ 3, 228, 232, 235.

[12] Complaint, ECF #1, PageID #26.

**C.**   **Because the Court's order addressed none of Appellants' claims, dismissal was not harmless error.**

While an erroneous dismissal will generally not be reversed if there are adequate alternative grounds for affirming it, no such grounds exist here. In particular, the Court's error was not harmless, as it leaves Appellants with none of their claims adjudicated, none of their requested relief granted, and instead demands enforcement of the *Zucco* guidelines, exactly what Appellants sought to end.[13]

**II.**   **The District Court erred in denying Appellants' motion for a preliminary injunction.**

While the grant or denial of a preliminary injunction is normally reviewed for an abuse of discretion, "the standard of review for a district court decision regarding a preliminary injunction with First Amendment implications is de novo." *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012). In such cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits" because "[t]he public interest analysis and the question of whether [plaintiffs] will suffer irreparable injury entirely depend on whether the [challenged laws] are constitutional." *Bays*, 668 F.3d at 819.

In *Bays*, two preachers sought an injunction against a city policy prohibiting them from leafleting in a park during the local Sweet Corn Festival. The district

---

[13] Complaint, ECF #1, PageID #26.

court denied their motion, holding that they were unlikely to succeed on the merits because the festival was run by private organizations, who were not bound by the First Amendment. But this Court conducted its own analysis of the state-action element and reversed, holding that police enforcement of the organizations' policies constituted state action and that because the policies likely failed strict scrutiny, all the factors for a preliminary injunction were present:

> [P]ublic interest and harm to the respective parties largely depend on the constitutionality of the solicitation policy. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Moreover, if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere its enjoinment. Finally, it is always in the public interest to prevent violation of a party's constitutional rights. Therefore, because Bays and Skelly have shown a strong likelihood of success on the merits due to the presence of state action and the fact that the solicitation policy is not narrowly tailored to serve a significant government interest, the other factors weigh in the plaintiffs' favor and counsel for the granting of the preliminary injunction.

*Bays*, 668 F.3d at 825.14

As laid out below, the Court should arrive at the same outcome here:

---

14 Internal citations and quotation marks omitted.

Page 13 of 24

**A.** **Because the BMV concedes that the *Zucco* guidelines are intended to ensure speech is "not offensive," they are neither reasonable nor viewpoint neutral.**

The District Court concluded that so long as they are "applied strictly," the *Zucco* guidelines can survive a facial challenge.

But, as laid out in Appellants' Motion for a Temporary Restraining Order and Preliminary Injunction,[15] the facts demonstrate that the BMV's rules for censoring vanity license plates are unconstitutionally vague and overbroad, so strict enforcement of those criteria only means that the BMV will continue violating the First Amendment.

Begin with vagueness, which can invalidate a law in two separate ways: "First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

Even strictly enforced, the *Zucco* guidelines utterly fail to give "ordinary people" notice of what is and is not prohibited, as the ordinary person is not a universal polyglot capable of determining whether any given license plate contains words or phrases that are considered profane or sexual or scatological "in any language," especially when the message can be read "either frontward or

---

[15] Pl. Mot. for Prelim. Inj., ECF #2, PageID #4–9.

Page 14 of 24

backward." Indeed, the English language is filled with words that are indisputably protected speech but forbidden when analyzed under *Zucco*'s "any language" provision. "BASS," "PET" and "TAIL," for instance, are all scatological if read in the right language,[16] but the BMV has nonetheless issued at least 600 plates containing those words.[17]

Exactly because this task is impossible, the *Zucco* guidelines likewise lend themselves to arbitrary and discriminatory enforcement, with censors picking and choosing—with nothing to constrain them beyond the directive to stamp out "offensive" speech—which forbidden foreign-language words will and will not make the cut. Words like "BASS," "PET" and "TAIL" slide past the BMV's censors either because the censors do not have adequate notice of what is and is not permitted, or because the censors are allowed to discriminate on the basis of viewpoint—whichever excuse the Court accepts, it is proof that the *Zucco* guidelines are unconstitutionally vague.

---

[16] Christopher Lucas, et al., *On the Evolution of Maltese Weak and Geminate Form I Verbs*, tbl. 6, DOI 10.5281/zenodo.16933070 (available online at https://festschrift-stolz.de/html/02-Lucas_et_al.html); *Cambridge Dictionary*, s.v. "pet" (French–English), https://dictionary.cambridge.org/dictionary/french-english/pet (last visited July 25, 2026); *Welsh-English Online Dictionary*, s.v. "tail," Univ. of Wales Trinity Saint David, https://geiriadur.uwtsd.ac.uk/?term=tail&direction=we&type=all&whichpart=exact&search=ateb_top (last visited July 27, 2026).

[17] Pl. Ex. 59, List of issued plates, ECF #8-2.

The overbreadth problem likewise remains unsolved, even with strict enforcement of the *Zucco* guidelines. A regulation is overbroad "if the impermissible applications of the law are substantial" when compared to its "plainly legitimate sweep.'" *Morales*, at 52. Each of the three *Zucco* guidelines fails this test, sweeping up vast amounts of protected speech along with the narrow categories of unprotected speech they were apparently drafted to prohibit:

1. Prong One, for instance, prohibits "obscene" messages, but it simultaneously prohibits "scatological" messages. That rule sweeps in all manner of protected—though concededly crude—speech under the "scatological" element: the list of rejected messages indicates hundreds of applicants have been denied plates with some variant of "CRAP," "DUNG," "FART," "POO," "STOOL," or "TURD."[18] These impermissible applications are substantial when compared to the plainly legitimate instances of prohibiting legally "obscene" messages, which seem likely to be exceedingly few and far between, given the BMV's seven-character limit.[19]

2. Prong Two, meanwhile, prohibits messages that "could reasonably be expected to provoke a violent response from viewers without additional comment." But that is, on its face, an impermissible, viewpoint-discriminatory heckler's veto, as it invites the BMV's censors to "examine the content of the message that is conveyed, … estimate the response of others to that content," and then restrict the message accordingly. Forsyth Cnty., Ga. v. Nationalist Movement, 505 U.S. 123,

---

[18] Pl. Ex. 66, List of rejected plates, ECF 2-66. This total excludes applications where applicants misspelled or abbreviated these terms.

[19] Even then, "obscene" speech is not *per se* unprotected; rather, it is only unprotected when it is limited to materials that "depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law." *Miller v. California*, 413 U.S. 15, 27 (1973). Here, there is no definition at all, so even obscene messages are likely still protected.

134 (1992)—viewpoints the public accepts are more likely to be approved, while viewpoints the public rejects are more likely to be rejected.

3. Prong Three prohibits messages that "advocate immediate lawlessness" or "advocate lawless activities." Again, this is, on its face, viewpoint discrimination: advocating against the Boston Tea Party is permitted; advocating for it is forbidden. This test has failed First Amendment scrutiny for decades, since *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), which limits restrictions on advocacy to that which is actually "directed to inciting or producing imminent lawless action" and "likely to incite or produce such action."

The District Court failed to resolve these problems because it applied the wrong standard when conducting its forum analysis. The error began with its conclusion—contrary to the Complaint's allegations and unsupported by any evidence—that vanity license plates are not a designated public forum but a nonpublic forum, where speech restrictions must be "reasonable and viewpoint neutral." From there, it simply concluded that the *Zucco* guidelines satisfy that test because they are "facially reasonable and viewpoint-neutral."[20] But that skips over every step that this Court and the Supreme Court have demanded in a forum analysis. It is not sufficient to simply say the state has a "a legitimate government interest … in protecting its citizens from exposure to profane language and from endorsing offensive messaging"; instead, the question is whether the state's speech

---

[20] Order denying Emergency Mot. for Inj., ECF #14, PageID #3960.

restrictions are reasonable *in light of the purpose served by the forum*—a question the District Court never asked (or answered). Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transportation, 978 F.3d 481, 493 (6th Cir. 2020).

More clearly, the District Court fumbled the viewpoint-neutrality analysis. The BMV represented—and the District Court accepted—that the purpose of the *Zucco* guidelines is to speech is "not offensive."[21] The Court accepted that representation as fact—even though it contradicted the Complaint's allegations— and concluded that because they are merely refusing to register vehicles using offensive words, the *Zucco* guidelines must therefore be viewpoint neutral. But that conclusion cannot be squared with the Supreme Court's decision in *Matal v. Tam*, 582 U.S. 218, 220 (2017), which held that "den[ying] registration to any mark that is offensive … is viewpoint discrimination in the sense relevant here: Giving offense is a viewpoint. The 'public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers."[22]

---

[21] Brief in Opp. to Mot. for Prelim. Inj., ECF #6, PageID #2494; Order Denying Mot. for Inj. Pending Appeal. ECF #14, PageID #3959.

[22] Discrimination based on offensiveness is only the beginning of the viewpoint-neutrality problem. The BMV has long applied the *Zucco* guidelines to favor all sorts of other viewpoints, as well. See, Pl. Mot. for Prelim. Inj., ECF #2, PageID #43–45.

In the end, then, the parties and the District Court all agree that the *Zucco* guidelines do just what *Matal* forbids—censoring speech because someone, somewhere, someday, might take offense. Because the undisputed evidence shows that the *Zucco* guidelines, strictly applied, remain both unconstitutionally vague and overbroad, Appellants are likely to succeed on the merits.

**B.     Because Appellants were likely to succeed on the merits, the remaining prongs were satisfied.**

Because Appellants are likely to succeed on the merits, *Bays* holds that all the remaining preliminary-injunction factors cut in their favor as well. The facts specific to this case vindicate the "collapsed" approach:

- Granting the injunction will prevent irreparable harm because Appellants are irreparably injured every day they are not able to receive other drivers' messages on the road, in parking lots, or in front of their homes. *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas.").[23]

- Granting the injunction will not cause substantial harm to others, as being exposed to free speech—even if that speech is "profane"—is not a cognizable injury unless "substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen v. California*, 403 U.S. 15, 21 (1971).

---

[23] The District Court found a reduced risk of irreparable harm because Appellants could just use bumper stickers to disseminate their messages instead. That rationale likewise runs headlong into Supreme Court precedent. *City of Ladue v. Gilleo*, 512 U.S. 43 (1994) (closing "an important and distinct medium of expression … can suppress too much speech by eliminating a common means of speaking.").

- Granting the injunction is necessarily in the public interest, as "it is always in the public interest to prevent the violation of a party's constitutional rights," *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994), "particularly First Amendment rights." *Nixon v. N. Loc. Sch. Dist. Bd. of Educ.*, 383 F. Supp. 2d 965, 975 (S.D. Ohio 2005).

Because all four factors supported it, the District Court committed reversible error when it denied Appellants' motion for a preliminary injunction.

## III.   The District Court erred in denying Appellants' request for attorney's fees.

Even if the District Court was correct in treating the action as a motion to enforce the *Zucco* guidelines "exactly as they are,"[24] it erred in denying attorney's fees for that enforcement effort.

Under 42 U.S.C. § 1988, a prevailing party in a Section 1983 case is entitled "a reasonable attorney's fee." "Although § 1988 uses permissive language regarding fee awards, 'the Supreme Court has read [§ 1988] as mandatory where the plaintiff prevails and special circumstances are absent.'" *Hescott v. City of Saginaw*, 757 F.3d 518, 523 (6th Cir. 2014). In *Hescott*, the plaintiff lost his primary claim for the unconstitutional demolition of his house, but prevailed on a secondary claim for siding that was seized from the house, as well. The district court refused to award fees, holding that the modest jury award, the limited value

---

[24] Order, ECF #9, PageID #3926.

of the property in question, and the City's good faith in litigation constituted

special circumstances justifying a denial of fees. But this Court reversed, holding

that none of those facts constituted special circumstances:

> None of these concerns constitutes special circumstances that would
> render a fee award unjust. In fact, we have never (to our knowledge)
> found a special circumstance justifying the denial of fees. Moreover, it
> is extremely rare to deny fees based on special circumstances in other
> circuits as well.

Hescott v. City of Saginaw, 757 F.3d 518, 525 (6th Cir. 2014) (cleaned up).

Here, Appellants are entitled to fees as prevailing parties because their case

effected a "material alteration of the legal relationship of the parties." *Sole v.*

*Wyner*, 551 U.S. 74, 82 (2007). The District Court ordered stricter adherence to the

*Saki I* consent judgment, it ordered the approval of Mr. Wonser's application for

"MF TNDRA," and it ordered the BMV to re-examine Mr. Saki's and Mr.

Corrigan's applications for "HOMO" and "MAFIA."[25]

The next question, then, is whether the District Court correctly concluded

that this is the one-in-a-million case where "special circumstances" nonetheless

require a complete denial of their attorneys' fees. Its decision was based on several

grounds that it independently identified with no input from the parties. The

decision to do so *sua sponte* is already sufficient grounds for reversal, as

---

[25] Although not reflected in the record, that re-examination resulted in Appellees
approving both applications.

Appellants were entitled to notice and an opportunity to be heard on the issue, and because this Court requires the non-prevailing party to bear the burden of actually demonstrating the existence of special circumstances. *Deja Vu v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 421 F.3d 417, 422 (6th Cir. 2005).

Even setting that limitation aside, none of the grounds the District Court cited constitute "special circumstances" justifying a denial of fees:

1. ***"They got money the first time."*** Section 1988 does not limit civil-rights litigants to fee awards in only their first lawsuit, and Mr. Saki's status as a prevailing party in *Saki I* does nothing to change his status as a prevailing party in *Saki II*. If he wants "fees for work performed in the separate action, whether for discovery or time spent drafting a brief, [he] can seek fees in that separate action." *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 631 (6th Cir. 2013).

2. ***"This time I have done it quickly."*** The number of hours spent on a case has no bearing on whether the plaintiff is entitled to fees in the first place; rather, it is the "starting point for determining the amount of a reasonable fee," *Hescott v. City of Saginaw*, 757 F.3d 518, 523 (6th Cir. 2014) (emphasis added). And this Court should not undermine that holding, as the District Court's approach creates perverse incentives to undermine judicial efficiency, discouraging plaintiffs seeking to recover their fees from participating in early efforts to mediate or otherwise negotiate for fear that their willingness to quickly resolve the case will then be grounds to limit their entitlement to relief.

3. ***"[T]his should have been filed … as a motion to enforce the settlement agreement."*** The District Court concluded that Appellants should have brought the case as an enforcement motion and therefore treated it as one. But if that was the case, Appellants nonetheless should have been awarded their fees, as "[s]ervices devoted to reasonable monitoring of the court's decrees, both to insure full compliance and to ensure that the plan is indeed working … are compensable services. They are essential to the

long-term success of the plaintiff's suit." *Northcross v. Bd. of Ed. of Memphis City Schs.*, 611 F.2d 624, 637 (6th Cir. 1979).

4. ***"[I]t was completely improper for Mr. Wonser to be part of this case."*** The District Court concluded that it was improper for Mr. Wonser to participate in the case, given this Court's previous decision in *Wonser v. Norman*, No. 25-3509, 2026 WL 1230540 (6th Cir. May 5, 2026), which rejected—on procedural grounds—his challenge to the denial of an application for "F46 LGB." But as laid out on the record and as "accepted" by the District Court,[26] this action was not an "end run" around that decision, as it was Mr. Saki—not Mr. Wonser—seeking relief relative to that application. Instead, he was seeking relief on his application for "MF TNDRA," *which the District Court granted*. Mr. Wonser's participation in the case was therefore not inappropriate and he remains a prevailing party entitled to a reasonable fee.

Because Appellants were prevailing parties and there are no special circumstances justifying a denial of fees, the District Court erred in denying attorney's fees.

## CONCLUSION

The District Court applied the wrong legal standard in dismissing the action, in denying the motion for a preliminary injunction, and in rejecting any entitlement to attorney's fees. Because it erred to Appellants' prejudice, the Court should reverse.

---

[26] Transcript, ECF 13, PageID #3944.

Respectfully submitted,

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Appellants William Saki,
Jeffrey Wonser, and Patrick Corrigan*

### CERTIFICATE OF COMPLIANCE

This document contains 6,150 words and therefore complies with Fed. R.

App. P. 25 (c)(2)'s type-volume limitation of no more than 13,000 words.

### CERTIFICATE OF SERVICE

I certify that on July 28, 2026, this document was served on opposing

counsel as provided by Fed. R. App. P. 25 (c)(2).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Appellants William Saki,
Jeffrey Wonser, and Patrick Corrigan*

**ADDENDUM**

| ECF | Description | PageID |
|---|---|---|
| 1 | Complaint | 1 |
| 2 | Appellants' Motion for Temporary Restraining Order and Preliminary Injunction | 30 |
| 6 | Appellees' Brief in Opposition to Appellants' Motion for Temporary Restraining Order and Preliminary Injunction | 2483 |
| 9 | Order dismissing case, *sua sponte* | 3925 |
| 10 | Notice of Appeal | 3929 |
| 11 | Appellants' Emergency Motion for an Injunction Pending Appeal | 3931 |
| 13 | Transcript of hearing on Appellants' Motion for Temporary Restraining Order and Preliminary Injunction | 3936 |
| 14 | Order denying Appellants' Emergency Motion for an Injunction Pending Appeal | 3956 |

Page 1 of 1