**CASE NO. 26-3495**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

WILLIAM SAKI; JEFFREY WONSER; PATRICK D. CORRIGAN

*Plaintiffs-Appellants*,

v.

CHARLES L. NORMAN; ANDY WILSON

*Defendants-Appellees*.

On appeal from the United States District Court
For the Northern District of Ohio
District Court Case No. 1:26-cv-1148

---

# BRIEF OF DEFENDANTS-APPELLEES CHARLES NORMAN AND ANDY WILSON

---

**Counsel for Appellees:**

*/s/ Andrew Fraser*
Ryan C. Spitzer (0093515)
Andrew Fraser (0097129)
**ISAAC WILES BURKHOLDER & MILLER, LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215-5098
P: 614.221.2138
F. 614.365.9516
rspitzer@isaacwiles.com
afraser@isaacwiles.com
*Counsel for Defendants-Appellees*
*Charles Norman and Andy Wilson*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to Sixth Cir. R. 26.1, Appellees make the following disclosure:

1. Are said parties a subsidiary of a publicly owned corporation? **No.**

2. Is there a publicly owned corporation, not a party, to the appeal that has a financial interest in the outcome? **No.**

Date: August 24, 2026

*/s/ Andrew Fraser*
Ryan C. Spitzer (0093515)
Andrew Fraser (0097129)
**ISAAC WILES BURKHOLDER & MILLER, LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215-5098
P: 614.221.2138
F. 614.365.9516
rspitzer@isaacwiles.com
afraser@isaacwiles.com
*Counsel for Defendants-Appellees*
*Charles Norman and Andy Wilson*

# TABLE OF CONTENTS

**PAGE**

DISCLOSURE OF CORPORATE AFFILIATIONS ........................................... i

AND FINANCIAL INTEREST ................................................................ i

TABLE OF AUTHORITIES ................................................................ iii

I. STATEMENT OF ISSUES ................................................................1

II. STATEMENT OF THE CASE ..........................................................1

III. SUMMARY OF THE ARGUMENT ..................................................5

IV. ARGUMENT ...................................................................................6

V. CONCLUSION ..............................................................................30

CERTIFICATE OF COMPLIANCE ......................................................31

CERTIFICATE OF SERVICE ..............................................................32

ADDENDUM .........................................................................................33

# TABLE OF AUTHORITIES

## CASES

*Akhtar-Zaidi v. United States*, 582 U.S. 905 (2017) .......... 13

*Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 978 F.3d 481, 493-94 (6th Cir. 2020) .......... 17, 18

*Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012) .......... 26

*Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001) .......... 27

*Berzanskis v. FCA US, LLC (In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.)*, 143 F.4th 718, 726 (6th Cir. 2025) .......... 12

*Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989) .......... 23

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) .......... 25, 26

*Broaderick v. Oklahoma*, 413 U.S. 601, 615 (1973) .......... 23, 24

*Byrne v. Rutledge*, 623 F.3d 46, 54 (2d Cir. 2010) .......... 5, 17, 19

*Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) .......... 12, 13

*Catz v. Chalker*, 142 F.3d 279, 286-87 (6th Cir. 1998) .......... 15

*City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) .......... 21

*City of Highland Park v. EPA*, 817 F. App'x 42, 51 (6th Cir. 2020) .......... 8

*Coles v. Granville*, 448 F.3d 853, 859 n. 1 (6th Cir. 2006) .......... 15

*Condon v. Wolfe*, 310 Fed. Appx. 807, 821 (6th Cir. 2009) .......... 21

*Cornelius v. NAACP Legal Def & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) .......... 17, 18

*Doe v. Oberlin Coll.*, 60 F.4th 345 (2023) .......... 15

*Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) .......... 27, 28

*Fla. Ass'n for Retarded Citizens v. Bush*, 246 F.3d 1296, 1299 (11th Cir. 2001) ........ 9

*Foreman v. Dallas County*, 193 F.3d 314, 323 (5th Cir. 1999) ........ 6, 28

*Forsyth v. Nationalist Movement*, 505 U.S. 123 (1992) ........ 24

*Hart v. Thomas*, 422 F.Supp.3d 1227, 1233 (E.D. Ky. 2019) ........ 5, 17

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ........ 27, 29

*Hewitt v. Helms*, 482 U.S. 755, 760 (1987) ........ 28

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) ........ 12

*Lorain NAACP v. Lorain Bd. of Educ.*, 979 F.2d 1141, 1148 (6th Cir. 1992) ........ 11

*Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 39 (1999) ........ 23

*Maher v. Gagne*, 448 U.S. 122, 129 (1980) ........ 28

*Matal v. Tam*, 582 U.S. 218 (2017) ........ 20

*McQueary*, 614 F.3d at 604 citing *Déjà Vu v. Metro. Gov't of Nashville and Davidson County*, 421 F.3d 417, 422 (6th Cir. 2005) ........ 28, 30

*Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010) ........ 25

*Minn. Voters Alliance v. Mansky*, 585 U.S. 1, 13 (2018) ........ 18

*Mitchell v. Md. Motor Vehicle Admin.*, 450 Md. 282, 310 (2016) ........ 5, 17

*Mt. Pleasant Blacktopping Co. v. Greene Cnty.*, 2022 U.S. App. LEXIS 12057, *8 (6th Cir. 2022) ........ 21

*Mt. Pleasant Blacktopping Co. v. Greene Cnty.*, 2022 U.S. App. LEXIS 12057, *9 (6th Cir. 2022) ........ 22

*Nationwide Life Ins. Co. v. Penn-Mont Ben. Servs.*, 2018 U.S. App. LEXIS 2483, *16-17 (6th Cir. Jan. 31, 2018) ........ 13

*Odquina v. City & Cnty. Of Honolulu*, 2022 U.S. Dist. LEXIS 201175, *39 (D. Haw. Nov. 4, 2022) .......................................................... 18, 19, 24

*Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 871 (6th Cir. 2015) ..................................................................................................8

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) ................................................................................................17

*Roberts v. Neace*, 65 F.4th 280, 285 (6th Cir. 2023) ............................................29

*Saki v. Norman*, No. 1:25-cv-01893 (N.D. Ohio) ...........................................2, 13

*Salibra v. Sup. Ct. of Ohio*, 730 F.2d 1059, 1062 (6th Cir. 1984) ..........................15

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) ......................................................26

*Sarabia v. Toledo Police Patrolman's Ass'n*, 601 F.2d 914, 917 (6th Cir. 1979) ..............................................................................................8

*Shavers v. Bergh*, 516 Fed. Appx. 568, 569 (6th Cir. 2013) .................................12

*Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 533 (6th Cir. 2012) ................................8

*Stone v. San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) ....................................8

*United Black Firefighters Assoc. v. City of Akron*, 1994 U.S. Dist. LEXIS 21898, *66 (N.D. Ohio Aug. 31, 1994) ............................................8

*United Food & Commer. Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 356 (6th Cir. 1998) .......................19

*United Food & Commer. Workers Union, Local 1099.*, 163 F.3d at 356 (6th Cir. 1998) ..........................................................................25

*United States v. 506,069.09 Seized from First Merit Bank*, 664 Fed.Appx. 422, 427 (6th Cir. 2016) ..........................................................13

*United States v. Bd. of Cty. Comm'rs*, 937 F.3d 679, 688 (6th Cir. 2019) ...................................................................................................7

*United States v. City of Loveland*, 621 F.3d 465, 471-472 (6th Cir. 2010) .............................................................................................8, 9

*United States v. Henson*, 705 Fed. Appx. 348, 352 (6th Cir. 2017) ........................23

*United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) ..................................12

*United States v. Williams*, 553 U.S. 285, 292-93 (2008).......................................23

*Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994) ...........................................................................................7

*Vanguards of Cleveland*, 23 F.3d at 1018 ...........................................................8

*Virginia v. Hicks*, 539 U.S. 113, 119 (2003) .........................................................24

*Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1144-46 (6th Cir. 1997) .........................................................................8, 10

*Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983) ........................... 7, 10, 23

*Wonser v. Norman*, 2026 U.S. App. LEXIS 13293, *3-4 (6th Cir. May 5, 2026) ...........................................................................................1

*Wonser v. Norman*, No. 25-3509, 2026 WL 1230540 (6th Cir. May 5, 2026) .........................................................................................2

*Zucco v. Caltrider*, Case No. 2:01-cv-01270 (S.D. Ohio filed Dec. 20, 2001) ....................................................................................... passim

**RULES**

Fed. R. Civ. P. 41 ........................................................................... xviii, xx

Fed. R. Civ. P. 41(b) ...................................................................xii, xiii, xviii

## I. STATEMENT OF ISSUES

1. Whether the District Court erred in dismissing Appellants' Complaint *sua sponte* after determining Appellants' Complaint was more appropriately a Motion to Enforce a Consent Order.

2. Whether Appellants may avoid enforcement of an existing consent order by joining other parties to a new action, even when that action involves subject matter and issues covered by the existing consent order.

3. Whether the twenty-five-year-old *Zucco* guidelines are reasonable and viewpoint neutral.

4. Whether Appellants are entitled to attorneys' fees as a prevailing party in an action when the District Court denied Appellants' Motion for a Preliminary Injunction and dismissed Appellants' Complaint? In the alternative, whether the District Court erred in declining to award Appellants with attorneys' fees when their counsel failed to disclose to the District Court that allegations contained in *Saki II* were already litigated and rejected by this Court. *See Wonser v. Norman*, 2026 U.S. App. LEXIS 13293, *3-4 (6th Cir. May 5, 2026); *see* ECF No. 13, pgs. 4, 7.

## II. STATEMENT OF THE CASE

Appellants William Saki, Jeffrey Wonser, and Patrick Corrigan (collectively "Appellants") comprise a group of individuals, the majority of whom have repeatedly attempted to obtain certain vanity plates from Appellees through the Ohio

Bureau of Motor Vehicles ("BMV") pursuant to a previously agreed-upon set of guidelines from a prior federal court case. *See generally Zucco v. Caltrider*, Case No. 2:01-cv-01270 (S.D. Ohio filed Dec. 20, 2001) (the "*Zucco* guidelines").

The *Zucco* guidelines, in place since 2001, dictate, in part, that personalized license plate applications shall be rejected if:

- They contain words, combinations, and/or phrases (in any language that are read either frontward or backward) that "are profane, obscene, sexually explicit, scatological," or,
- are "so offensive that they could reasonably be expected to provoke a violent response from viewers without additional comment," or,
- advocate immediate lawlessness or advocate lawless activities.

Two-thirds of the Appellants previously challenged the *Zucco* guidelines. This Court rejected Appellant Wonser's request for a vanity plate reading "F46 LGB." *See Wonser v. Norman*, No. 25-3509, 2026 WL 1230540 (6th Cir. May 5, 2026). Appellant Saki obtained the vanity plates "GAY" and "MUSLIM" through an active consent order emanating from the Northern District of Ohio. *See Saki v. Norman*, No. 1:25-cv-01893 (N.D. Ohio).

Appellants brought the current action challenging the denial of proposed vanity plates reading "HOMO," "FAG," "FAGGOT," "CUNTY," "F46 LGB," "MF TNDRA," and "MAFIA" (hereafter, "*Saki II*").

The *Saki II* Complaint alleges that these denials violate the First Amendment and the *Saki I* consent order. Appellants also filed a Motion for a Preliminary Injunction to obtain the requested plates. Appellees filed a Memorandum in Opposition arguing Appellant Wonser's claims were barred by res judicata, that their rejection of the proposed vanity plates did not violate the First Amendment, and that the *Zucco* guidelines were neither unconstitutionally vague nor overbroad.

On May 28, 2026, the District Court held a status conference on the Motion for Preliminary Injunction. During the status conference, the District Court stated Appellants erred by bringing this case as a separate action when it should have been brought as a Motion to Enforce the *Saki I* consent order. The District Court noted that the *Saki I* consent order was to resolve future issues related to contested vanity plates. *See* ECF No. 13, pg. 3; 16-23 ("First, this is a second go-around. I spent a fair amount of time with Mr. Saki and these Defendants late last year. I resolved this case. It was a very clear order, very clear, simple directives. If the Plaintiff, Mr. Saki, if you felt the Department was not complying with that settlement order, you should have filed a motion to enforce.")

Accordingly, the District Court dismissed the action in its entirety while instructing Appellees to issue Appellant Wonser a vanity plate reading "MF TNDRA." Ultimately, the District Court noted its displeasure with Appellants'

attempt to bring challenges clearly barred by res judicata, or which should have been brought as a Motion to Enforce the *Saki I* consent order.[1]

The District Court issued an order to this effect on May 29, 2026. ECF No. 9 PageID #3925-3928. Appellants subsequently filed an Emergency Motion Pending Appeal on May 31, 2026, which the District Court denied in a June 2, 2026, Order. ECF No. 14 PageID #3956-3963.

---

[1] "And Mr. Wonser and counsel, I was very displeased after reading everything to see that you had brought a similar challenge to the denial of a vanity license plate F46 LGB, whatever. In another Court, you lost on the grounds that it was time barred, and just this past week the Sixth Circuit affirmed that, and it was improper to try and do an end-run around that and bring a new case. *And, quite frankly, I could sanction you and your counsel for doing that, but I don't have the time to worry about that, but I am pointing that out*."

…

"One of the reasons I am not awarding anything, any attorneys fees is because, one, this should have been filed differently, not as a new case, but as a motion to enforce the settlement agreement. *And second, it was completely improper for Mr. Wonser to be part of this case at all or at least particularly to challenge the F46LGB license plate, which had already been addressed by another Court.*"

…

"I treated it that it should have been filed as a motion to enforce the settlement agreement, and I have done that, and I am directing it, and I am not ordering any fees or costs because of the – for the reasons I have said."

ECF No. 13, pgs. 4; 4-14, 7; 19-25, 8; 1-3; 20; 1-7 (emphasis added).

Appellants allege the District Court's dismissal was procedurally improper, that it erred in denying its Motion for Preliminary Injunction, and that it erred in declining to award Appellants' attorneys' fees.

## III. SUMMARY OF THE ARGUMENT

The District Court properly dismissed *Saki II*. Since there was a prior order already in place—the *Saki I* consent order—the District Court properly held that Appellants should have filed this action as a Motion to Enforce the existing consent order. Furthermore, simply because Appellants also brought a facial challenge to the *Zucco* guidelines themselves does not mean that the District Court lacked discretion to require them to file a Motion to Enforce the existing consent order. Since Appellants failed to enforce the existing consent order from *Saki I*, the Court correctly dismissed the case pursuant to Fed. R. Civ. P. 41(b).

The District Court correctly denied Appellants' Motion for a Preliminary Injunction, finding that to the extent that alphanumeric text on government-issued vanity plates was not pure government speech, it was speech in a nonpublic forum. *See, e.g. Hart v. Thomas*, 422 F.Supp.3d 1227, 1233 (E.D. Ky. 2019); *Mitchell v. Md. Motor Vehicle Admin.*, 450 Md. 282, 310 (2016); *Byrne v. Rutledge*, 623 F.3d 46, 54 (2d Cir. 2010). Accordingly, the District Court applied the proper test and found that the *Zucco* guidelines are reasonable and viewpoint neutral. It also correctly found that the guidelines are neither vague nor overbroad. Finally, it correctly found that

Appellants could not show irreparable harm because they could have used other methods (like bumper stickers) to convey their intended messages.

Lastly, the District Court properly declined to award Appellants attorneys' fees as Appellants do not constitute a prevailing party. And even if Appellants had prevailed on their Motion for a Preliminary Injunction, injunctive relief does not constitute the type of merit-based relief that affords a plaintiff prevailing-party status. *Foreman v. Dallas County*, 193 F.3d 314, 323 (5th Cir. 1999). In the alternative, even if this Court finds that Appellants were a prevailing party, which it should not find, special circumstances weigh against an award of fees.

## IV. <u>ARGUMENT</u>

The District Court correctly dismissed Appellants' Complaint *sua sponte*. Appellant Saki is a party to the *Saki I* consent order, so Appellants are bound by its terms. Additionally, despite alleging a facial constitutional challenge, Appellants' primary concern is their alleged unfair enforcement under the *Zucco* guidelines. The District Court properly construed the *Saki I* consent order to cover all of Appellants' claims. As a result, the District Court properly dismissed their Complaint pursuant to Fed. R. Civ. P. 41(b). Contrary to Appellants' contentions, the District Court had the authority to do this on its own. Finally, *even if* this Court finds that the District Court erred in dismissing Appellants' Complaint, such error was harmless.

### A. The District Court correctly exercised its discretion in treating Appellants' Complaint as a Motion to Enforce the *Saki I* consent order; it was therefore appropriate for the District Court to dismiss Appellants' Complaint *sua sponte*.

The District Court correctly exercised its discretion in treating Appellants' Complaint as a Motion to Enforce the *Saki I* consent order. In response, Appellants make two arguments: (1) the District Court should not have required them to file their action as a Motion to Enforce because Appellants Wonser and Corrigan were not parties to the *Saki I* consent order; and (2) the District Court should not have required them to file their action as a Motion to Enforce because they are actually seeking relief *outside* of the *Saki I* consent order. Both arguments fail.

#### *1. Appellants Wonser and Corrigan could still be required to file a Motion to Enforce the Saki I Consent Order despite not being parties to the original agreement.*

Appellants allege that Wonser and Corrigan could not file a Motion to Enforce the *Saki I* consent order because they were not parties to the order. This is incorrect as a matter of law. "[A] consent decree is a 'settlement agreement subject to continued judicial policing.'" *United States v. Bd. of Cty. Comm'rs*, 937 F.3d 679, 688 (6th Cir. 2019) citing *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994) quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). "[I]t is well-settled that 'courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.'" *Id.* citing *Vanguards of Cleveland*, 23 F.3d at 1018 quoting *Sarabia v. Toledo Police*

*Patrolman's Ass'n*, 601 F.2d 914, 917 (6th Cir. 1979). This Court has emphasized that the district court's power is "broad," and "[t]he court's choice of remedies is reviewed for an abuse of discretion. *Id.* citing *Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 533 (6th Cir. 2012) quoting *Stone v. San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992). The *only* recourse to remedy alleged violations of a consent decree is to seek a contempt citation in the earlier case, not to file a whole new claim in a new lawsuit. *See United Black Firefighters Assoc. v. City of Akron*, 1994 U.S. Dist. LEXIS 21898, *66 (N.D. Ohio Aug. 31, 1994).

As stated, a district court retains jurisdiction to police its consent decrees. *United States v. City of Loveland*, 621 F.3d 465, 471-472 (6th Cir. 2010) citing *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1144-46 (6th Cir. 1997); *see also City of Highland Park v. EPA*, 817 F. App'x 42, 51 (6th Cir. 2020) citing *Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 871 (6th Cir. 2015) (noting that "[D]istrict courts retain jurisdiction to enforce their own orders, including [consent judgments entered by their authority].") Requiring parties to bring a new lawsuit when a consent decree is in effect wastes judicial resources re-litigating issues that have been dealt with, while denying the parties the benefit of their bargain. *Fla. Ass'n for Retarded Citizens v. Bush*, 246 F.3d 1296, 1299 (11th Cir. 2001). Such a consent decree may even apply to persons or entities that were non-parties to the consent decree. *See Loveland*, 621 F.3d at 471 (noting that "to be sure,

*Loveland was not a party to the consent decree. However, it cannot escape the district court's jurisdiction over its consent decree through artful pleading and argument*.") (emphasis added).

The District Court did not err in converting Appellants' filing to a Motion to Enforce the consent order in *Saki I*, despite Wonser and Corrigan admittedly not being parties to *Saki I*. Appellant Saki's decision to include Wonser and Corrigan in this suit is exactly the type of artful pleading to avoid a prior consent agreement that courts warn against. Indeed, if Appellants are not required to file a Motion to Enforce the *Saki I* consent order, it raises several practical questions. First, would Appellees have to enter into a separate consent agreement with *every* plaintiff who ever challenged a vanity plate? Such a system would lead to an unenforceable patchwork of individualized resolutions. Second, could Appellant Saki evade the consent order forever simply by finding new co-plaintiffs every time he wishes to challenge the denial of one of his desired vanity plates? Furthermore, the improper addition of Appellant Wonser to this case is illustrated by his bad-faith effort to reargue a claim about a vanity plate—"F46 LGB"—that the District Court had already dismissed in a previous action. Accordingly, Appellants were required to file a Motion to Enforce the *Saki I* consent order.

2. *Despite their claims to the contrary, Appellants seek enforcement of the Saki I consent order.*

Curiously, Appellants pivot from their argument above to next assert that they are *not* actually seeking to enforce the *Saki I* consent order because the *Zucco* guidelines outlined in *Saki I* are unconstitutional. Appellants' Complaint in *Saki II* fatally contradicts this claim, and should begin and end this Court's analysis relative to Appellants' argument. The *Saki II* Complaint dedicates dozens of paragraphs to explaining the *Saki I* settlement, Compl. at ¶ 184-193, how Appellees have allegedly violated various aspects of the settlement, Compl. at ¶ 194-210, and how Appellees allegedly still arbitrarily *enforce* the *Zucco* guidelines. Compl. at ¶ 211-224.

In fact, while Appellants do allege a facial challenge to the constitutionality of the *Zucco* guidelines, Compl. at ¶ 225-233, it is clear that they are contesting how Appellees *enforce* the guidelines – not the constitutionality of the guidelines thereof. That topic is squarely addressed in the *Saki I* consent order.

A consent decree has "attributes of both a contract and of a judicial act" and is "essentially a settlement agreement subject to continued judicial policing." *Waste Mgmt. of Ohio, Inc.*, 132 F.3d at 1145 citing *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). This quality requires courts to: (1) retain jurisdiction over the decree during the term of its existence; (2) protect the integrity of the decree with its contempt powers; and (3) modify the decree should changed circumstances subvert its purpose. *Id.* at 1145-46 citing *Williams*, 720 F.2d at 920. Courts, therefore, have

a duty to enforce, interpret, modify, and terminate their consent decrees as required by circumstance. *Id.* at 1146. Additionally, although interpretation of a consent decree is to follow the general rules prescribed in contract law, the courts, in effectuating the purposes or accomplishing the goals of the decree, *are not bound under all circumstances by the terms contained within the four corners of the parties' agreement*. *Id.* citing *Lorain NAACP v. Lorain Bd. of Educ.*, 979 F.2d 1141, 1148 (6th Cir. 1992).

Appellants' real concern involves the receipt of their purportedly constitutional vanity plates, which Appellants believe the BMV wrongfully denied under the *Zucco* guidelines. This falls squarely within the consent order from *Saki I*'s framework. The clear intent of the *Saki I* consent order was to resolve these vanity plate issues once and for all so that the District Court does not need to hear an endless string of *Saki* cases in perpetuity. Accordingly, the District Court interpreted the *Saki I* consent order, as it had the authority to do, to cover all of Appellants' claims alleged in the *Saki II* Complaint. Nothing was improper about this process.

**B. The District Court did not violate the party-presentation principle.**

The District Court correctly dismissed Appellants' Complaint *sua sponte* because there was a prior court order in place—the *Saki I* consent order—and Appellants failed to enforce it. Contrary to Appellants' contentions, the District

Court did not violate the party-presentation principle. The principle of party presentation is, like many legal rules, not "ironclad." *Berzanskis v. FCA US, LLC (In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.)*, 143 F.4th 718, 726 (6th Cir. 2025) citing *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020). Fed. R. Civ. P. 41 permits a district court to dismiss an action if a plaintiff fails to prosecute or comply with court orders. Fed. R. Civ. P. 41(b). When a court's order "incorporate[es] the terms of the settlement agreement in the order…a breach of the agreement would be a breach of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

While Fed. R. Civ. P. 41 does not expressly provide for a *sua sponte* dismissal, "[i]t is well settled that a district court has the authority to dismiss *sua sponte* a lawsuit for failure to prosecute." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013). "The rule allows district courts to manage their dockets and avoid unnecessary burdens on both courts and opposing parties." *Shavers v. Bergh*, 516 Fed. Appx. 568, 569 (6th Cir. 2013) (per curiam). The factors relevant to a determination under Rule 41(b) include: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were

imposed or considered before dismissal of the action. *United States v. 506,069.09 Seized from First Merit Bank*, 664 Fed.Appx. 422, 427 (6th Cir. 2016) (quoting *Carpenter*, 723 F.3d at 703-04, *cert denied sub nom. Akhtar-Zaidi v. United States*, 582 U.S. 905 (2017). "The plaintiff has the burden of showing that his failure to comply [with orders of the court] was due to inability, not willfulness or bad faith." *Nationwide Life Ins. Co. v. Penn-Mont Ben. Servs.*, 2018 U.S. App. LEXIS 2483, *16-17 (6th Cir. Jan. 31, 2018).

Here, there was a prior court order in place—the *Saki I* consent order—which Appellants failed to enforce. *Saki I* involved one of the same Appellants in this matter, who brought a First Amendment case against the Appellees because they denied his vanity plate applications for "GAY" and "MUSLIM." *See Saki v. Norman*, Case No. 1:25-cv-01893, ECF 1 at PageID #17-18,20-24. As a result of that case, Appellees agreed to approve the vanity plate applications for "GAY" and "MUSLIM," and, as part of the consent order, agreed to:

> [R]eview its database and unlock any words that do not meet the three-prong standard of being "offensive, disparaging or socially insensitive" as set forth in the settlement reached in *Zucco v. Caltrider*, Case No. 2:01-cv-1270 (S.D. Ohio). The BMV also agreed to provide instructions on its website for applicants who believe their application has been improperly rejected in violation of the Zucco standard.

*Id.* ECF 6 at PageID #3040-3041. The primary purpose of the *Saki I* consent order, other than finalization of *Saki I*, was to provide a framework for both Appellants and

Appellees so that Appellants would cease bringing an endless stream of new lawsuits challenging Appellees' denial of various vanity plate applications.

The Complaint brought in *Saki II* was what the *Saki I* consent order was created to avoid. Appellants should have brought this action as a motion to enforce the consent order, and their failure to do so warranted dismissal under Fed. R. Civ. P. 41 after the District Court addressed their claims in the status conference.

The relevant factors courts consider when determining whether a Rule 41(b) dismissal is appropriate further reinforce this point. First, Appellants' failure to file a Motion to Enforce the existing *Saki I* consent order was due to willfulness, bad faith, and fault. As explained, Appellants were clearly aware of the *Saki I* consent order (some were even parties to it), yet they *chose* to file an additional separate lawsuit that falls squarely within the terms of that order, presumably in a naked attempt to recoup fees.

Appellants' clear desire is to continue concocting vanity plates that intentionally present questions under the *Zucco* guidelines and then file related, but technically separate, 1983 actions. This should not be rewarded. Indeed, Appellees must expend taxpayer dollars defending each of these lawsuits. Finally, Appellants were aware of the *Saki I* consent order and knew that they were to abide by its terms. As a result, the District Court correctly dismissed Appellants' action *sua sponte* and was not required to give further notice to Appellants.

**C. In the alternative, any District Court error was harmless.**

Even if this Court determines that the District Court erred in dismissing Appellants' Complaint *sua sponte*, which it should not, such error was harmless. This Court's decision in *Doe v. Oberlin Coll.*, 60 F.4th 345 (2023), is instructive on this matter. In *Doe*, the appellant brought a 42 U.S.C. § 1983 due process claim, which the district court dismissed *sua sponte*. *Id.* at 352. However, contrary to law, the record did not show that the district court gave appellant notice that it planned to dismiss his federal due process claim and deny his motion for a temporary restraining order. *Id.* Additionally, the district court did not give appellant a sufficient opportunity to either respond to the notice of dismissal or amend his complaint. *Id.* However, this Court noted that even though errors occurred, it did not necessitate remand. *Id.* at 353. Indeed, prior case law indicated that it could proceed to the merits. *Id.,* citing *see e.g. Catz v. Chalker*, 142 F.3d 279, 286-87 (6th Cir. 1998); *Salibra v. Sup. Ct. of Ohio*, 730 F.2d 1059, 1062 (6th Cir. 1984). The Court also noted that *sua sponte* dismissal on the merits when the merits question "is purely a legal question not requiring of a factual record" is less problematic. *Id.* at 352 citing *Coles v. Granville*, 448 F.3d 853, 859 n. 1 (6th Cir. 2006).

Here, even if the District Court erred in dismissing Appellants' Complaint *sua sponte*, which it did not, such error was harmless. Appellants' claim that the *Zucco*

guidelines are facially unconstitutional. For the reasons explained in Section D, *infra*, that claim fails and warrants dismissal.

### D. The District Court correctly denied Appellants' Motion for a Preliminary Injunction.

The District Court's Order methodically provides a detailed analysis outlining why the Appellants are unlikely to succeed on the merits of their facial challenges to Ohio's *Zucco* guidelines. It also correctly notes that Appellants cannot show that they will suffer irreparable harm absent injunctive relief. The District Court's analysis is correct – there is no reason to stray from it.

This Court should ignore Appellant's inapposite case law suggesting otherwise and uphold the District Court's conclusion that the *Zucco* guidelines are neither unconstitutionally vague nor overly broad.

#### *1. As an initial matter, the District Court correctly found that the alphanumeric text on vanity plates is a nonpublic forum and applied the proper level of scrutiny to the Zucco guidelines.*

The District Court correctly found that the alphanumeric text on vanity plates is a nonpublic forum.[2] The District Court's Order found that the alphanumeric text

---

[2] Other lower courts have held that it *is* purely government speech that is not subject to First Amendment protection at all. *See e.g. Gilliam v. Gerregano*, 2025 Tenn. LEXIS 54 (Tenn. Feb. 26, 2025); *M J Nichols Co, Inc. v. Thompson*, 2025 U.S. Dist. LEXIS 257869 (W.D. Wisc. Dec. 12, 2025); *Odquina v. City & Cnty. Of Honolulu*, D. Haw. No. 22-cv-407-DKW-RT, 2022 U.S. Dist. LEXIS 201175 (Nov. 4, 2022). Appellees argued to the District Court that such text is purely government speech and preserve that same argument here, while also acknowledging that some courts

on vanity plates is not purely government speech, nor is it purely private speech either. ECF No. 14 at PageID #3959. Accordingly, it acknowledged that a forum analysis was necessary to determine the level of scrutiny placed on the *Zucco* guidelines. *Id.* at PageID #3959-60. In conducting this analysis, it correctly noted that most courts that have taken up the issue have held that license plates are a nonpublic forum. *See, e.g. Hart v. Thomas*, 422 F.Supp.3d 1227, 1233 (E.D. Ky. 2019); *Mitchell v. Md. Motor Vehicle Admin.*, 450 Md. 282, 310 (2016); *Byrne v. Rutledge*, 623 F.3d 46, 54 (2d Cir. 2010). As a result, it concluded that the *Zucco* guidelines should be upheld as long as they are reasonable and viewpoint neutral. *See Cornelius v. NAACP Legal Def & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983); *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 978 F.3d 481, 493-94 (6th Cir. 2020).

In their brief, Appellants state—without any supporting case law—that the alphanumeric text on vanity license plates is speech in a designated public forum (which would require strict scrutiny) rather than in a nonpublic forum. As explained

---

have found that alphanumeric text on vanity plates is private speech in a nonpublic forum subject to some First Amendment protection. Of note, the Fourth Circuit has most recently weighed in, determining that personalized character combinations on Virgina's vanity plates are private speech, not government speech. *Whateley v. Lackey*, 2026 U.S. App. LEXIS 2310 (4th Cir. July 31, 2026).

above, case law from several courts shows this is incorrect. Accordingly, the District Court properly applied the "reasonable and viewpoint neutral" standard to the *Zucco* guidelines.

2. *The Zucco guidelines are facially constitutional under the reasonable and viewpoint-neutral standard.*

The *Zucco* guidelines are constitutional when applying the reasonable and viewpoint neutral standard. The District Court correctly noted that "this test grants a considerable amount of leeway to the government." ECF No. 14 at PageID #3960. Indeed, this Court has previously observed:

> The government's reasons for imposing a restriction (its ultimate *ends*) need not be "compelling." *Cornelius*, 473 U.S. at 808. They need only be "permissible." *Minn. Voters Alliance v. Mansky*, 585 U.S. 1, 13 (2018). And a restriction need not be "narrowly tailored" (the least restrictive *means*) to achieve those ends. *Cornelius*, 473 U.S. at 809. The restriction need only offer a "sensible basis for distinguishing what may come in from what must stay out." *Mansky*, 585 U.S. at 16.

*Am. Freedom Def. Initiative*, 978 F.3d at 493-94 (emphasis in original) (cleaned up). Protecting members of the public and children from viewing "offensive" or "obscene" messages when they "by necessity must use the public highways is a legitimate government interest. *Odquina v. City & Cnty. Of Honolulu*, 2022 U.S. Dist. LEXIS 201175, *39 (D. Haw. Nov. 4, 2022). Additionally, this Court has previously held that avoidance of controversy is a valid ground for restricting speech in a nonpublic forum, because a nonpublic forum is not dedicated to general debate

or the free exchange of ideas. *See United Food & Commer. Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 356 (6th Cir. 1998).

Meanwhile, in assessing viewpoint neutrality, two guiding principles emerge. *Byrne*, 623 F.3d at 55 (2d Cir. 2010) (internal citations omitted). First, the government may…restrict content by prohibiting any speech on a given topic or subject matter. *Id.* at 54-55. Second, however, once the government has permitted some comment on a particular subject matter or topic, it may not regulate speech in ways that favor some viewpoints or ideas at the expense of others. *Id.*

The District Court considered the *Zucco* guidelines under the standard for speech in a nonpublic forum and concluded, correctly, that they are facially constitutional. Appellants take issue with the fact that the District Court noted that "it is facially reasonable and viewpoint neutral for the State of Ohio to reject speech that is profane…obscene, sexually explicit, or scatological[,]" or is "so offensive" it could provoke violence, or advocate lawlessness. ECF No. 14 PageID #3960. However, as stated, federal courts have specifically held that protecting members of the public from obscene and offensive messages is a reasonable and legitimate government interest. *Odquina*, 2022 U.S. Dist. LEXIS 201175 at *39. Indeed, countless states and federal organizations have similar reasonable rules prohibiting profanity in nonpublic fora. *Id.* at fn. 16. Accordingly, the District Court correctly found that the *Zucco* guidelines are facially reasonable.

Likewise, the District Court correctly noted in its Order that "the *Zucco* guidelines do not facially endorse certain viewpoints at the expense of others." ECF No. 14 at PageID #3960. In their brief, Appellants do not actually explain how the guidelines fail to be facially neutral.[3] Instead, Appellants mischaracterize the *Zucco* guidelines, implying that the guidelines allow BMV reviewers to deny proposed vanity plates based on what they determine to be "offensive speech." This is demonstrably false. As stated, the *Zucco* guidelines require rejection of proposed vanity plates for three clear reasons: (1) the plate contains speech that is profane, obscene, sexually explicit, or scatological; (2) the plate contains speech that is so offensive it could provoke violence; or (3) the plate advocates lawlessness. Accordingly, any insinuation that the BMV gives reviewers carte blanche to "reject anything you think might be offensive" is flatly incorrect.

Appellants' reliance on *Matal v. Tam*, 582 U.S. 218 (2017) is misplaced. In that case, the U.S. Patent and Trademark Office denied an application for a band named "the Slants" because the name may "disparage…or bring…into contempt or disrepute" any "persons, living or dead." *Id.* at 223. The Supreme Court held that the restriction was not viewpoint neutral because giving offense is a viewpoint, and

[3] Footnote 22 of Appellants' Brief alleges "the BMV has long applied the *Zucco* guidelines to favor all sorts of other viewpoints." Even if this allegation were true, it would be more appropriately dealt with through as-applied challenges to the guidelines' application.

the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers. *Id.* at 243-44. However, as stated, "giving offense" is not one of the *Zucco* guidelines. Instead, the *Zucco* guidelines require denial of proposed vanity plates based on three very clear criteria. Accordingly, the District Court correctly found that the *Zucco* guidelines are reasonable and viewpoint neutral.

### E. The *Zucco* guidelines are not unconstitutionally vague.

The *Zucco* guidelines are not unconstitutionally vague. The constitutional vagueness test has two parts. A statute, rule, or regulation is vague if: (1) it may fail to provide the kind of notice that will enable ordinary people to understand what conduct in prohibits; and (2) it may authorize and even encourage arbitrary or discriminatory enforcement. *Condon v. Wolfe*, 310 Fed. Appx. 807, 821 (6th Cir. 2009); *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). "A party's claim that a statute is unconstitutionally vague faces a high bar, as few statutes meet the void-for-vagueness threshold." *Mt. Pleasant Blacktopping Co. v. Greene Cnty.*, 2022 U.S. App. LEXIS 12057, *8 (6th Cir. 2022).

A person of ordinary intelligence understands the common dictionary definitions of the words "profane" (involving profanity or other disrespectful language), "obscene" (portraying offensive, disgusting material), "sexually explicit," and "scatological" (related to excrement or excretion). "So offensive that

it could reasonably provoke a violent response" is a reasonable standard, and so is "advocating for lawlessness or lawless activities." One need not be a "universal polyglot," as Appellants contend, to understand these common definitions and phrases and to use their best judgment accordingly. As a result, a person of ordinary intelligence can understand the *Zucco* Guidelines.

The *Zucco* Guidelines likewise do not authorize or encourage arbitrary and discriminatory enforcement. Appellants again mischaracterize the BMV's directive as simply "to stamp out offensive speech," but this completely ignores the three categories outlined in the *Zucco* guidelines themselves. Accordingly, at most, all Appellants allege is that the guidelines have been inconsistently *enforced*. However, "allegedly arbitrary or inconsistent enforcement of a regulation whose terms are unambiguous does not render the regulation impermissibly vague." *Mt. Pleasant Blacktopping Co. v. Greene Cnty.*, 2022 U.S. App. LEXIS 12057, *9 (6th Cir. 2022); *see also 600 Marshall Entm't Concepts, LLC v. City of Memphis*, 705 F.3d 576, 586-87 (6th Cir. 2013). As a result, the *Zucco* guidelines are not unconstitutionally vague, and the District Court correctly held that Appellants were unlikely to succeed on the merits of this facial challenge.

**F. The *Zucco* guidelines are not unconstitutionally overbroad.**

Similarly, the *Zucco* guidelines are not unconstitutionally overbroad. According to the First Amendment overbreadth doctrine, a statute is facially invalid

if it prohibits a substantial amount of protected speech. *United States v. Henson*, 705 Fed. Appx. 348, 352 (6th Cir. 2017) citing *United States v. Williams*, 553 U.S. 285, 292-93 (2008). The doctrine seeks to strike a balance between competing social costs. To maintain an appropriate balance, courts have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. *Id.* citing *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989); *Broaderick v. Oklahoma*, 413 U.S. 601, 615 (1973). Invalidation for overbreadth is "strong medicine" that is not to be "casually employed." *Id.* citing *Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 39 (1999).

The first step in a facial overbreadth analysis is to construe the challenged statute, as it is impossible to determine whether a statute reaches too far without first knowing what the statute covers. *Williams*, 553 U.S. at 293. The second step is to determine whether the statute prohibits a substantial amount of protected expressive activity. *Id.* at 297.

Here, the District Court properly held that the strong medicine of the overbreadth doctrine should not be employed to invalidate the *Zucco* guidelines that have been in place for twenty-five years. Application of laws or regulations that violate the First Amendment can still be remedied through as-applied litigation and, as a result, the overbreadth doctrine is used sparingly and only as a last resort.

*Virginia v. Hicks*, 539 U.S. 113, 119 (2003); *Broaderick*, 413 U.S. at 613. The District Court correctly found there was no reason to exercise that last resort here.

When construing *Zucco's* first prong, Appellants merely list certain vanity plates the BMV has denied in the past and then conclude—while citing no supporting case law—that the guidelines' "profane, obscene, sexually explicit, and scatological" criteria sweep in all manner of protected speech under the scatological element. In reality, and as explained above, federal courts have already clearly stated that protecting the public from "offensive" or "obscene" messages while driving on public highways is a legitimate government interest. *Odquina*, 2022 U.S. Dist. LEXIS 201175 at *39. Scatological material is clearly offensive and is not—contrary to Appellants' claims—protected speech "swept up" by the *Zucco* guidelines.

When construing *Zucco's* second prong, Appellants claim that its prohibition against "language that could reasonably be expected to provoke a violent response from viewers without additional comment" is an impermissible viewpoint discriminatory heckler's veto. This is incorrect. In support of this claim, Appellants cite *Forsyth v. Nationalist Movement*, 505 U.S. 123 (1992). *Forsyth*, however, bears no resemblance to this case. In *Forsyth*, a county passed an ordinance requiring a permit and a fee before authorizing public speaking, parades, or assemblies. *Id.* at 130. The Court noted that the ordinance involved "the archetype of a traditional

public forum," and was a prior restraint on speech. *Id.* Restrictions on speech in a traditional public forum receive strict scrutiny. *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010). However, as stated, the alphanumeric text on license plates is a nonpublic forum and thus restrictions must only be reasonable and viewpoint neutral. Avoidance of controversy is a valid, reasonable, and viewpoint neutral ground for restricting speech in a nonpublic forum, because a nonpublic forum is not dedicated to general debate or the free exchange of ideas. *See United Food & Commer. Workers Union, Local 1099.*, 163 F.3d at 356 (6th Cir. 1998). The desire to avoid provoking violence unquestionably falls under this category. Accordingly, *Zucco's* second prong is not unconstitutionally overbroad either.

Finally, in construing *Zucco's* third prong, Appellants allege that prohibiting vanity plates that "advocate immediate lawlessness" or "advocate lawless activities," violates the First Amendment because such a test has failed since *Brandenburg v. Ohio*, 395 U.S. 444 (1969). However, in *Brandenburg*, the Supreme Court specifically noted that:

> Constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation *except* where such advocacy is directed to inciting or producing *imminent lawless action* and is likely to incite or produce such action.

*Id.* at 447 (emphasis added). *Brandenburg* specifically states that a state may restrict text on a vanity plate if it advocates immediate lawlessness. Contrary to Appellants'

contentions, such a restriction is both reasonable and viewpoint neutral. As a result, *Zucco's* third prong is not unconstitutionally overbroad.

In its Order, the District Court correctly concluded that, assuming the *Zucco* guidelines are applied strictly as they are written, they provide a clear basis for distinguishing what is and is not allowed on a vanity plate. ECF No. 14 PageID # 3961. Accordingly, the District Court correctly declined to apply the drastic remedy of striking down the twenty-five-year-old *Zucco* guidelines based on overbreadth.

### G. The District Court correctly held that Appellants were unlikely to show irreparable harm.

Aside from their unlikelihood of success on the merits of their claims, the District Court correctly held that Appellants also could not show irreparable harm. While it acknowledged that Appellants were correct that in *most* First Amendment cases, the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury, *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012), the District Court also noted that a showing of irreparable harm requires a very high bar. It noted that mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough to show irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

The District Court correctly reasoned that, even if Appellants cannot obtain some of the desired vanity plates, there are other similar ways for them to get their points across. For example, the Court noted that Appellants could place bumper

stickers or window stickers with identical messages on their cars, where these messages would be unquestionably private speech. ECF No. 14 PageID #3962. Accordingly, the District Court correctly concluded that, in addition to being unlikely to succeed on the merits, Appellants could not show irreparable harm.

For the above reasons, the District Court properly held that Appellants were not entitled to a preliminary injunction.

## I. The District Court correctly denied Appellants' request for attorneys' fees.

### *1. The District Court properly declined to grant Appellants attorneys' fees because they were not prevailing parties.*

The District Court correctly denied Appellants' request for attorneys' fees because Appellants were not prevailing parties in this action. "To be a prevailing party, a party must succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001) citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "A plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties…in a way that directly benefits the plaintiffs. *Id.* citing *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

A temporary restraining order or a preliminary injunction is not merits-based relief. *Foreman v. Dallas County*, 193 F.3d 314, 323 (5th Cir. 1999). Nor is it a final remedy. *Id.* Instead, these are "stay put" equitable remedies that have as their

essential purpose the preservation of the status quo while the merits of the case are explored through litigation. *Id.* As such, a temporary restraining order or preliminary injunction cannot constitute the type of merit-based relief that affords a plaintiff prevailing party status. *Id.* Furthermore, the plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, *Farrar*, 506 U.S. at 111 citing *Hewitt v. Helms*, 482 U.S. 755, 760 (1987), or comparable relief through a decree or settlement. *Maher v. Gagne*, 448 U.S. 122, 129 (1980).

In Appellants' case, the District Court's *sua sponte* dismissal of their claims, left them without a judgment to enforce against the Appellees. As a result, they are not prevailing parties to the action. In dismissing the case, the District Court also denied Appellants' Motion for a Preliminary Injunction. However, *even if* the District Court *had* granted Appellants' Motion, this still would not have made them prevailing parties because such an order would not constitute merits-based relief. *See McQueary*, 614 F.3d at 604 (noting "we think, that, when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988.").

Furthermore, the District Court's order simply instructs Appellees to "apply the *Zucco* guidelines exactly as they are—nothing more and nothing less." ECF 9 PageID #3926. This does not materially alter the relationship between the parties. Instead, it merely instructs Appellees to apply the guidelines already in place. While,

the Court did tell Appellees to reconsider vanity plate applications for "HOMO" and "MAFIA" and to issue a vanity plate reading "MF TNDRA," this only amounts to an order to apply the guidelines as they are *already* in place. Therefore, it does not materially change the parties' positions. *See Roberts v. Neace*, 65 F.4th 280, 285 (6th Cir. 2023). As a result, Appellants were not a prevailing party, and the District Court did not err in declining to award them attorneys' fees.

2. *Even if this Court does determine that Appellants were prevailing parties—which it should not—special circumstances warrant the denial of attorneys' fees.*

Even if this Court does determine that Appellants were prevailing parties in District Court—which it should not—special circumstances warrant the denial of attorneys' fees. The special circumstances exception to awards of attorneys' fees flows from dicta in *Hensley v. Eckerhart*, which states that district courts may deny fees to a prevailing party in special circumstances when an award would be unjust. 461 U.S. at 446. This Court has acknowledged the doctrine on several occasions and has observed that a non-prevailing party must make a strong showing to establish special circumstances. *McQueary*, 614 F.3d at 604 citing *Déjà Vu v. Metro. Gov't of Nashville and Davidson County*, 421 F.3d 417, 422 (6th Cir. 2005).

While the special circumstances doctrine is admittedly narrow, this case does present special circumstances. The only possible aspect of the District Court's order on which Appellants could even possibly claim they prevailed is the Court's directive

to approve and issue Appellant Wonser's requested vanity plate for "MF TNDRA." However, as Appellants acknowledge in their brief, the District Court found it was improper for Appellant Wonser to be a part of *Saki II* because he raises claims that have already been litigated. *See* ECF No. 13, pgs. 4; 4-14, 7; 19-25, 8; 1-3; 20; 1-7.

Accordingly, since Appellants' award of attorneys' fees would be based *solely* upon relief granted to a party who should have never even been a party to this action in the first place, the special circumstances doctrine is implicated. Indeed, it establishes that Appellants are not entitled to an award of attorneys' fees in this case.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Appellees respectfully request that this Court uphold the District Court's decision in its entirety and affirm its *sua sponte* dismissal of Appellants' action.

Respectfully submitted,

<u>*/s/ Andrew Fraser*</u>
Ryan C. Spitzer (0093515)
Andrew Fraser (0097129)
**ISAAC WILES BURKHOLDER & MILLER, LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215-5098
P: 614.221.2138
F. 614.365.9516
rspitzer@isaacwiles.com
afraser@isaacwiles.com
*Counsel for Defendants-Appellees*
*Charles Norman and Andy Wilson*

## CERTIFICATE OF COMPLIANCE

Pursuant to Sixth Cir. R. 32(a), the undersigned counsel certifies that:

1. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word, in Times New Roman 14-point font.

2. Counsel also certifies that the word count utility associated with Microsoft Word returned a report that **8,689 words** and **879 lines** appear herein.

*/s/ Andrew Fraser*
Andrew Fraser (0097129)

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2026, a copy of the foregoing *Brief of Defendants-Appellees Charles Norman and Andy Wilson* was filed in the U.S. Court of Appeals for the Sixth Circuit. Notice of this filing will be sent to all parties registered with the Court by operation of the Court's electronic filing system.

*/s/ Andrew Fraser*
Andrew Fraser (0097129)

# ADDENDUM
## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Description of Entry | Date | Page I.D. Number Range | Record Entry No. |
|---|---|---|---|
| Transcript of TRO Status Hearing | June 2, 2026 | 3936-3955 | 13 |
| Order denying Motion for Temporary Restraining Order and Preliminary Injunction | May 29, 2026 | 3925-3928 | 9 |
| Order denying Emergency Motion for Injunction Pending Appeal | June 2, 2026 | 3956-3963 | 14 |