IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| **WILLIAM SAKI,** *et al.*,<br>*Appellants,*<br>v.<br>**CHARLES L. NORMAN,** *et al.*,<br>*Appellees.* | Case No.: 26-3495 |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
JUDGE DAN AARON POLSTER
NO. 1:26-CV-1148

# REPLY IN SUPPORT OF BRIEF OF APPELLANTS WILLIAM SAKI, JEFFREY WONSER, AND PATRICK CORRIGAN

Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave., Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Appellants William Saki, Jeffrey Wonser, and Patrick Corrigan*

## TABLE OF CONTENTS

Table of Authorities ........................................................................... iii
Law & Argument ................................................................................... 1
I. The District Court committed reversible error by dismissing Appellants' complaint sua sponte, and none of Appellees' cases suggest otherwise. ....... 1
A. Appellees' own cases demonstrate that the District Court committed reversible error by dismissing Appellants' complaint in violation of the party-presentation principle. ....................................................... 1
B. Appellees' own cases demonstrate that the District Court committed reversible error by dismissing Appellants' complaint based on its preference for enforcement actions. .................................................. 6
C. Because the Court's order addressed none of Appellants' claims, dismissal was not harmless error. ................................................. 10
II. The District Court erred in denying Appellants' motion for a preliminary injunction, and Appellees' argument to the contrary repeats the exact same errors. ............................................................................................ 11
A. Appellees repeat the District Court's error in assessing reasonableness and viewpoint-neutrality subjectively, rather than by applying the relevant precedents. ........................................................................ 11
1. A speech restriction that undermines the purpose of the forum cannot be reasonable in light of the purpose of the forum ........... 11
2. A speech restriction is not viewpoint neutral when it prohibits speech because it is offensive or it advocates lawlessness. .......... 14
B. Even Appellees' own definitions, the Zucco guidelines are unconstitutionally vague, and telling the public to "use their best judgment" does not cure the infirmity. ........................................... 18
C. Appellees admit they prohibit "disrespectful" or "offensive" speech, which bars far more protected speech than unprotected, making the Zucco guidelines unconstitutionally overbroad. ............................... 20
III. Appellees' defense of the District Court's refusal to award attorney's fees is not supported by the record. ............................................................ 23
Conclusion ........................................................................................... 24
Certificate of Compliance ..................................................................... 25
Certificate of Service ............................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transportation*, 978 F.3d 481 (6th Cir. 2020) ........ 11, 12, 13, 14

*Barfus v. City of Miami*, 936 F.2d 1182 (11th Cir. 1991)........ 10

*Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228 (6th Cir. 2015)........ 16

*Brown v. Bd. of Ed.*, 347 U.S. 483 (1954)........ 5

*City of Highland Park v. Env't Prot. Agency*, 817 F. App'x 42 (6th Cir. 2020) ........ 7

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985) ........ 13

*Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 158 F.4th 732 (6th Cir. 2025) ........ 15

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........ 5

*Fla. Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296 (11th Cir. 2001)........ 8

*Iancu v. Brunetti*, 588 U.S. 388 (2019)........ 15

*In Re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718 (6th Cir. 2025) ........ 2, 3

*Jones v. Loc. 520, Int'l Union of Operating Eng'rs*, 603 F.2d 664 (7th Cir. 1979) ........ 10

*Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359 (6th Cir. 1999) ........ 3

*Matal v. Tam*, 582 U.S. 218, 243 (2017) ........ 14

*McCollough v. Portland State Univ.*, No. 24-7617, 2026 WL 2124367 (9th Cir. July 23, 2026) ........ 21

*Obergefell v. Hodges*, 576 U.S. 644 (2015) ........ 5

*Odquina v. City & Cnty. of Honolulu*, No. 22-CV-407-DKW-RT, 2022 WL 16715714 (D. Haw. Nov. 4, 2022) ........ 13

*Packingham v. North Carolina*, 582 U.S. 98 (2017)........ 21

*Reno v. Am. C.L. Union*, 521 U.S. 844 (1997) ........ 22

*Taylor v. Sturgell*, 553 U.S. 880 (2008)........ 6

*United Black Firefighters Ass'n v. City of Akron*, No. 5:90 CV 1678, 1994 WL 774510 (N.D. Ohio Aug. 31, 1994) ........ 9

*United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341 (6th Cir. 1998) ........ 14

*United States v. City of Loveland*, 621 F.3d 465 (6th Cir. 2010) ........ 7

*United States v. Stevens*, 559 U.S. 460 (2010) ........ 22

*Whateley v. Lackey*, 184 F.4th 368, 382–83 (4th Cir. 2026) ........ 1

**Statutes**

Ohio Rev. Code § 4503.42 .......... 13
Ohio Rev. Code § 5529.05 .......... 12

**Constitutional Provisions**

U.S. Const., Amend. I .......... passim
U.S. Const., Amend. XIV .......... 9
U.S. Const., Amend. XXII .......... 16
U.S. Const., Article I, Section 2 .......... 16

**Secondary Sources**

Danny Y. Li, *Antisubordinating the Second Amendment*, 132 Yale L.J. 1821 (2023) .......... 5
Katie R. Eyer, *The Canon of Rational Basis Review*, 93 Notre Dame L. Rev. 1317 (2018) .......... 5
Leland B. Ware, *Setting the Stage for Brown: The Development and Implementation of the NAACP's School Desegregation Campaign, 1930-1950*, 52 Mercer L. Rev. 631 (2001) .......... 5

## Summary of Argument

The messages on vanity license plates are private speech, subject to First Amendment protection appropriate to the nature of the forum. *Whateley v. Lackey*, 184 F.4th 368, 382–83 (4th Cir. 2026).

Nonetheless, Appellees maintain—and the District Court agreed—that they may ban those messages merely because they are offensive, because they are disrespectful, because other people might not like them, or because they advocate against the government's rules.

As laid out below, the First Amendment cannot sustain such restrictions, and the District Court erred in denying Appellants an opportunity to pursue claims seeking to enforce their rights.

## Law & Argument

### I. The District Court committed reversible error by dismissing Appellants' complaint *sua sponte*, and none of Appellees' cases suggest otherwise.

#### A. Appellees' own cases demonstrate that the District Court committed reversible error by dismissing Appellants' complaint in violation of the party-presentation principle.

There appears to be no dispute that the District Court resolved the case on grounds that the parties had not presented—the only question is whether doing so violates the party-presentation principle.

Appellees answer in the negative, noting this Court's guidance that "the principle of party presentation is, like many legal rules, not 'ironclad.'" *In re*

*Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 726 (6th Cir. 2025). But they fail to acknowledge the Court's very next sentence: "But that does not mean that district courts can disregard this principle whenever it would be convenient to do so." Instead, the rule sets a "very high bar" that can only be cleared "in exceptional cases or particular circumstances" or when "the rule would produce a plain miscarriage of justice." *Id*.

Appellees do not argue that the District Court cleared that bar here. They do not argue that the case was exceptional, that any particular circumstances justified deviating from the rule, or that enforcing the rule would produce a plain miscarriage of justice. Instead, they hopscotch across the law of dismissal in hopes of landing on a winning argument. They point first to Fed. R. Civ. P. 41, only to immediately concede that it does not authorize *sua sponte* dismissals. They fall back on the trial court's inherent authority to dismiss for failure to prosecute without arguing Appellants failed to prosecute, then immediately move to their double-fallback argument, that the trial court has the authority to manage its docket so as to "avoid unnecessary burdens on both courts and opposing parties."[1]

Aside from the overall incoherence, each component of the argument fails independently. First, the question is not whether dismissal itself violated the party-

[1] Appellees' Brief, 12.

presentation principle, but whether deciding which vehicle Appellants should have used violated the party-presentation principle. Defendants had explicitly raised the first issue,[2] but no one asked about the latter.[3] Second, a trial court's authority to dismiss for failure to prosecute has no conceivable application to a case that is only 16 days old. And third, their argument that the trial court has inherent authority to "avoid unnecessary burdens" is exactly the sort of convenience argument this Court rejected in *In Re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 726 (6th Cir. 2025), where it refused to "overlook the district court's error by pointing to concerns about judicial economy."

Still in search of a safe place to land, Appellees leap back to Rule 41(b), seeking to justify the dismissal based on this Court's four-part test governing dismissals for failure to prosecute and failures to comply with court orders. That test comes from *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999), which asks:

1. whether the party's failure is due to willfulness, bad faith, or fault;
2. whether the adversary was prejudiced by the dismissed party's conduct;
3. whether the dismissed party was warned that failure to cooperate could lead to dismissal; and

---

[2] Opp. to Mot. for Prelim. Inj., ECF #6, PageID #2486 ("Plaintiffs' current Complaint should be summarily dismissed.").

[3] PageID #1–3963.

4. whether less drastic sanctions were imposed or considered before dismissal was ordered.

Again, though, it is unclear what this argument is doing in their brief, as the District Court never found—or even suggested—that Appellants had failed to prosecute or comply with any order. Even if this test had some applicability, Appellants completely fail to explain how the District Court's order satisfied any portion of it:

1. They argue that Appellants "failed to enforce" an order—not that they failed to comply with it. They say Appellants were required to "abide by its terms," but never identify any terms that were violated, nor how non-parties could have been bound by it in the first place.
2. They do not argue that they were unfairly prejudiced by Appellants' conduct, as an enforcement action would have required them to answer the same allegations.
3. They do not argue that the District Court warned Appellants they were facing dismissal, as it didn't.
4. They do not argue that the District Court imposed or even considered any less drastic sanctions, as it didn't.

In the end, Appellees' justification for violating the party-presentation principle boils down to grousing about the prospect of "an endless stream of new lawsuits challenging Appellees' denial of various vanity plate applications."[4] But those who break the law should not be heard to complain of the burden of defending their lawlessness. As long as governments exist, they will seek to violate

[4] Appellees' Brief, 14.

their citizens' rights, so Congress created an incentive for citizens to bring them to heel. The record only shows that Appellants' goal is to obtain license plates that express the messages they want to express, but even if their goal were to "intentionally present questions under the *Zucco* guidelines and then file related, but technically separate, 1983 actions" until their legal questions were answered—the same strategy that brought us *Brown v. Bd. of Ed.*, 347 U.S. 483 (1954),[5] *Obergefell v. Hodges*, 576 U.S. 644 (2015),[6] and *District of Columbia v. Heller*, 554 U.S. 570 (2008)[7]—that would only mean that Section 1983 is working as designed. If they are truly concerned about the possibility of "expend[ing] taxpayer dollars defending each of these lawsuits," Appellees can merely defend the case on the merits instead of seeking procedural escape hatches: If the *Zucco* guidelines satisfy the First Amendment, the lawsuits will end; if the *Zucco* guidelines violate the First Amendment, Appellees can stop violating the First Amendment.[8]

---

[5] Leland B. Ware, *Setting the Stage for Brown: The Development and Implementation of the NAACP's School Desegregation Campaign, 1930-1950*, 52 Mercer L. Rev. 631, 632 (2001) (attributing the end of separate-but-equal to "a long-range, carefully coordinated litigation campaign").

[6] Katie R. Eyer, *The Canon of Rational Basis Review*, 93 Notre Dame L. Rev. 1317, 1344 (2018) (attributing marriage equality to a "multiyear litigation campaign [that] involved multiple points of legal engagement in coordination").

[7] Danny Y. Li, *Antisubordinating the Second Amendment*, 132 Yale L.J. 1821, 1851 (2023) (attributing the individual right to bear arms to a "strategy that … 'required sympathetic clients, a media-savvy approach, and strategic lawyering.'").

[8] Setting aside the weakness of this argument, the Supreme Court has already rejected it as grounds for rewriting the rules of civil procedure. *Taylor v. Sturgell*,

Because there was no justification for violating the party-presentation principle, and because there was no notice to Appellants, the District Court committed reversible error by concocting its own basis for dismissal and denying Appellants their day in court without notice and an opportunity to be heard.

### B. Appellees' own cases demonstrate that the District Court committed reversible error by dismissing Appellants' Complaint based on a preference for enforcement actions.

The District Court dismissed the Complaint because it "should have been filed differently, not as a new case, but as a motion to enforce the settlement agreement."[9] But the authority it cited in support of that conclusion never says that plaintiffs in Appellants' position are *required* to enforce judgments rather than initiate new claims—only that if they had done so, the court would have had jurisdiction to provide relief.

Appellees' authorities move the District Court's decision no closer to redemption. Pointing to *United States v. City of Loveland*, 621 F.3d 465, 471–72 (6th Cir. 2010), they argue that this case presents "exactly the type of artful pleading to avoid a prior consent agreement that courts warn against." But

553 U.S. 880, 903 (2008) ("[I]t is theoretically possible that several persons could coordinate to mount a series of repetitive lawsuits. But we are not convinced that this risk justifies departure from the usual rules.").

[9] Hearing transcript, ECF #13, PageID #3942.

*Loveland* does not support their argument at all; it pulls the rug out from beneath it. In that case, the plaintiff, looking to enforce a consent decree, filed a brand-new action for declaratory judgment, and the defendant sought to dismiss the case for lack of jurisdiction. The trial court denied the motion, holding that the plaintiff "properly selected" its forum because it was trying to address conduct "directly related to its concerns about the implementation of the Consent Decrees." This Court affirmed, holding that in such a situation, the questions at issue should be "resolved on the merits," rather than being dodged in deference to the *defendant's* "artful pleading."

So where *Loveland* stands for the proposition that a plaintiff's proper invocation of jurisdiction to resolve a case on the merits overcomes artful pleading to the contrary, the District Court flipped the rule, artfully construing the pleadings to deprive Appellants of claims it had jurisdiction to resolve on the merits.

Appellees then point to *City of Highland Park v. Env't Prot. Agency*, 817 F. App'x 42, 51 (6th Cir. 2020), but that case likewise calls for reversal here, as it *rejected* an effort to enforce a consent decree to obtain relief that "goes well beyond that one document." If this Court's rule is that a party to a consent decree may not invoke it to enforce rights springing from other sources, then Appellants here could not have obtained the First Amendment relief they sought by relying on

*Saki I*, which requires only enforcement of the *Zucco* guidelines, rather than the enforcement of the First Amendment that Appellants are seeking.

Appellees turn next to *Fla. Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1299 (11th Cir. 2001), for the proposition that "[r]equiring parties to bring a new lawsuit when a consent decree is in effect wastes judicial resources re-litigating issues that have been dealt with, while denying the parties the benefit of their bargain."[10] The question here, though, is not whether a new lawsuit should have been *required*, but whether it was an option. *Fla. Ass'n for Retarded Citizens* holds that a new lawsuit should not be required, but it assumes that it is at least permitted, as none of its other analysis would be necessary if filing a new complaint was not an option to begin with. Further, rejecting the Complaint in this case offers none of the benefits—"avoiding re-litigation of facts, flexibility of enforcement procedures available to courts, and channeling of litigation to single forum"—that case relied on to reach its holding: No facts were litigated in *Saki I*, the court's authority to grant the relief requested in the new Complaint was far broader than its authority to enforce *Saki I*, and the case was resolved not only in the same forum but by the exact same judge under either approach.

---

[10] Appellees' Brief, 8.

Against all this, Appellees rest their argument on a 32-year-old, unpublished district-court opinion holding that the "only recourse to remedy alleged violations of the … Consent Decree would be to seek a contempt citation in the earlier case not to file a whole new claim based on a contract theory." *United Black Firefighters Ass'n v. City of Akron*, No. 5:90 CV 1678, 1994 WL 774510, at *17 (N.D. Ohio Aug. 31, 1994). Again, they miss the point entirely: Appellants have not, at any point, asked the court to remedy violations of the consent decree requiring enforcement of the *Zucco* guidelines; instead, they have always maintained that "the Guidelines are facially unconstitutional"[11] because they "violate the First and Fourteenth Amendment rights to free speech,"[12] and they have never asked to *enforce* those guidelines, but rather to declare that they are "unconstitutional on their face"[13] and enter "a preliminary injunction barring [Appellees] from enforcing those rules."[14]

In the end, Appellees offer no authority saying that nonparties may enforce a consent order to obtain relief that the order never granted—let alone that they may not seek different relief in a new action. Nor do they bother to acknowledge or

[11] Complaint, ECF #1, PageID #23.

[12] Complaint, ECF #1, PageID #30.

[13] Complaint, ECF #1, PageID #26.

[14] Mot. for Prelim. Inj., ECF #2, PageID #46.

address Appellants' cases with holdings directly contradicting their theory. *See*, *e.g.*, *Navajo Nation v. San Juan Cnty.*, 929 F.3d 1270, 1279 (10th Cir. 2019); *Barfus v. City of Miami*, 936 F.2d 1182, 1188 (11th Cir. 1991); *Jones v. Loc. 520, Int'l Union of Operating Eng'rs*, 603 F.2d 664, 666 (7th Cir. 1979).

Because there was no justification for dismissing the Complaint on those grounds, the District Court committed reversible error by doing so without notice and an opportunity to be heard.

### C. Because the Court's order addressed none of Appellants' claims, dismissal was not harmless error.

Appellees urge the Court to disregard both the party-presentation principle and the District Court's inexplicable demand for a motion to enforce because dismissing the entire action was harmless error.

Their assertion of harmless error rests on a single argument: that the *Zucco* guidelines are not facially unconstitutional. That argument is wrong for the reasons laid out below, but even if it were correct, it would not render the District Court's error harmless. Perhaps it would justify dismissing Claim 1, which raises that facial challenge, but it would do nothing to resolve Claim 2, which raises an as-applied challenge; it would do nothing to resolve Claim 3, which alleges Equal Protection violations; and it would do nothing to resolve Claim 4, which does not challenge the *Zucco* guidelines at all.

Appellees offer no explanation how surviving a facial challenge could justify dismissing claims raising non-facial challenges. Because the Court's errors denied Appellants all their requested relief and ordered the opposite of what they asked, its errors in doing so were not harmless.

## II. The District Court erred in denying Appellants' motion for a preliminary injunction, and Appellees' argument to the contrary repeats the exact same errors.

### A. Appellees repeat the District Court's error in assessing reasonableness and viewpoint-neutrality subjectively, rather than by applying the relevant precedents.

Appellants maintain that under Ohio law, vanity plates are a designated public forum and therefore generally subject to strict scrutiny. For purposes of preliminary injunctive relief, though, they only asked the District Court to determine whether the *Zucco* guidelines met the lower standard of reasonableness and viewpoint-neutrality that govern less-protected forums.

#### 1. A speech restriction that undermines the purpose of the forum cannot be reasonable in light of the purpose of the forum.

Both the District Court and Appellees pay lip service to *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transportation*, 978 F.3d 481, 493-94 (6th Cir. 2020), but neither bothers to apply the actual test it laid down. They emphasize dicta to the effect that the government's reasons for imposing a speech restriction in a nonpublic forum need not be compelling or narrowly tailored if it can offer a sensible basis for distinguishing what is and is not allowed, but they

never acknowledge the language immediately preceding this, which says the reasonableness of their restrictions must not be assessed "in the abstract," but instead "in light of the purpose served by the forum," *id.*, nor do they ever attempt to analyze the *Zucco* guidelines in that light.

Here, the purpose of the forum makes all the difference, and Appellees are understandably reluctant to address it. But this point is undisputed: the General Assembly established the vanity-plate forum for one purpose and one purpose only: "to establish a Roadside Park Fund and provide funding therefor." Am. Sub. H.B. 215, 110th Gen. Assemb., 135 Ohio Laws 71 (1974). And that purpose remains the only purpose today; Ohio Rev. Code § 5529.05 is essentially unchanged and continues to require that vanity-plate registration fees "shall be used to construct, reconstruct, maintain, and repair public roadside park areas, to provide for beautification projects along the state highway system."

Viewed in light of that purpose, Appellees' argument unravels. Neither they nor the District Court has ever suggested that the *Zucco* guidelines are reasonable in light of that purpose, and it is hard to imagine how they could; a vanity license plate that acknowledges the existence of poo—or that is "so offensive," or that advocates for a lawless activity—generates as much revenue for roadside parks as one that does not. Indeed, rejecting an application on any of those grounds *undermines* the General Assembly's purpose by generating no funding whatsoever,

so the more than 62,000 applications rejected[15]—at $50 per plate, Ohio Rev. Code § 4503.42—have cost the Roadside Parks Fund more than $3 million.

Appellees never explain why, when their purpose is to generate funding for that program, avoiding fart jokes requires them to forgo $3 million of such funding.[16] Instead, they simply repeat the District Court's holding that all the *Zucco* criteria are "facially reasonable," relying on a single district court decision from Hawaii that likewise never asked whether similar restrictions were reasonable in light of the purpose of the forum, instead substituting its assessment of the reasonableness of prohibiting "vulgar" messages in light of the "nature" of the forum, rather than its purpose. *Odquina v. City & Cnty. of Honolulu*, No. 22-CV-407-DKW-RT, 2022 WL 16715714, at *14 (D. Haw. Nov. 4, 2022).

Applying the actual test laid down in *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) and reiterated in *Am. Freedom Def. Initiative*, the *Zucco* guidelines must fail the reasonableness test. Appellees may not need to show "strict incompatibility" between scatological messages and the Roadside Parks Fund, but they must at least show *some* incompatibility, which they have not done. They may not need to show that the *Zucco* guidelines are

[15] List of rejected plates, ECF #2-61, PageID #2302–2400.

[16] Appellees have rejected no fewer than 62,566 messages, PageID #2302–2400, each of which could have generated $50 for the Roadside Parks Fund. Ohio Rev. Code § 4503.42

narrowly tailored to generate revenue for the Roadside Parks Fund, but they must show that the *Zucco* guidelines at least help generate revenue—or at least that they don't affirmatively turn revenue away. If there is some logic supporting their approach, the burden is on Appellees to explain it, *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 357 (6th Cir. 1998) ("[T]he state must prove the links in its chain of reasoning, for example, that its rules and its application of the rules in fact serve a legitimate interest of the state."), but they have made no effort to do so here.

Because they undermine the purposes of the vanity-plate forum, the *Zucco* guidelines cannot be reasonable in light of the purpose of the forum, and the District Court erred in concluding otherwise.

#### 2. A speech restriction is not viewpoint neutral when it prohibits speech because it is offensive or advocates lawlessness.

While both this Court and the Supreme Court have directed lower courts to define viewpoint discrimination broadly and to closely scrutinize facially neutral rules to ensure they aren't a cover for viewpoint discrimination, *Matal v. Tam*, 582 U.S. 218, 243 (2017); *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transportation*, 978 F.3d 481, 499 (6th Cir. 2020), Appellees endorse the District Court's approach of simply assuming the issue away.

The District Court concluded that the *Zucco* guidelines are viewpoint neutral because they "do not facially endorse certain viewpoints at the expense of others."[17] How it reached this conclusion is unclear, and Appellees' brief offers no meaningful explanation, either. It is undisputed, for instance, that the second guideline prohibits messages based on the BMV's assessment of how "offensive" they are, thereby endorsing inoffensive messages at the expense of offensive ones, which both this Court and the Supreme Court have repeatedly held to constitute viewpoint discrimination. *Iancu v. Brunetti*, 588 U.S. 388, 399 (2019); *Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 158 F.4th 732, 744 (6th Cir. 2025).

Appellees' response on this point is incoherent. They argue that Appellants "mischaracterize" the *Zucco* guidelines by saying the BMV rejects applications because they are offensive, which they say is "demonstrably false." But their very next sentence admits that "the *Zucco* guidelines require rejection" if a plate "is so offensive it could provoke violence." Where exactly is the mischaracterization? Perhaps Appellees believe they can save their ban on offensive messages by tying it to the reactions of the most reflexively violent readers, but that just makes it viewpoint discrimination for another reason. *Bible Believers v. Wayne Cnty.,*

[17] List of issued plates, ECF #8-2, PageID #3960.

*Mich.*, 805 F.3d 228, 248 (6th Cir. 2015) ("The heckler's veto is precisely that type of odious viewpoint discrimination.").

Faced with on-point Supreme Court and Sixth Circuit precedent foreclosing their argument, Appellees double-down on denialism, arguing that *Matal*'s rule against prohibition on speech that gives offense has no relevance here because the *Zucco* guidelines reject messages "based on three very clear criteria"—but one of those criteria is that the messages are offensive.

Appellees do nothing to explain why the third prong does not likewise discriminate on the basis of viewpoint, merely parroting the District Court's finding the guidelines "do not facially endorse certain viewpoints at the expense of others." But the third prong does just that: endorsing messages that advocate *against* "lawless activities" while prohibiting messages that advocate *for* them. A driver may not advocate for a violation of the Twenty-Second Amendment with a license plate that says "DJT 4EVR," but a driver who wants Trump removed from office immediately is allowed to express that viewpoint with a license plate that says "DUMP DJT." A driver who wants to elect Elon Musk president in violation of Article I, Section 2, may not advocate such lawlessness with a license plate reading "MUSK 28," but a driver opposing such lawlessness is entitled to a license plate reading "NVR MUSK." Even a license plate that says "SPEED" is

prohibited, Ohio Rev. Code § 4511.21, while a plate that says "SLO DOWN" is permitted.

Appellees justify this discrimination by saying *Brandenburg v. Ohio*, 395 U.S. 444 (1969), permits the state to restrict speech "if it advocates immediate lawlessness."[18] But that is exactly what *Brandenburg* rejected. In that case—like this one—the state of Ohio sought to prohibit "mere advocacy" of lawless conduct. The Supreme Court rejected efforts to outlaw merely teaching the idea that breaking the law may, in some cases, be justified; instead, it said prohibitions on "incitement" may only be aimed at advocacy that is *both* "directed to inciting or producing imminent lawless action" and "likely to incite or produce such action." *Brandenburg*, 395 U.S. at 447. Just as in *Brandenburg*, the *Zucco* guidelines satisfy neither test: they prohibit mere advocacy of lawless conduct regardless of purpose, regardless of imminence, and regardless of the likelihood of actually producing that action.

Ohio was wrong in *Brandenburg* and it is wrong here. Because the *Zucco* guidelines facially discriminate against viewpoints advocating for offensive ideas or lawlessness, the District Court erred in finding that they were viewpoint neutral.

[18] Appellees' Brief, 25.

### B. By Appellees' own definitions, the *Zucco* guidelines are unconstitutionally vague, and telling the public to "use their best judgment" does not cure the infirmity.

The parties agree that the Court's vagueness analysis should move in two steps, asking first whether the *Zucco* guidelines "provide the kind of notice that will enable ordinary people to understand what conduct [it] prohibits," and if so, whether "it may authorize and even encourage arbitrary or discriminatory enforcement."[19]

While the guidelines are vague enough on their face—as laid out in Appellants' brief and in their motion for a preliminary injunction—Appellees' explanation of them only reinforces the problem. For instance, they say the first prong prohibits "disrespectful language" and "offensive … material," but that is just an admission of viewpoint discrimination. And even if it weren't, a person of ordinary intelligence has no idea what the BMV's censors will classify as disrespectful or offensive. How disrespectful or offensive must a message be? And to whom?

Appellees' application of the rule drives the point home. No one of ordinary intelligence can discern why disrespectful, offensive speech is permitted when it is directed at Joe Biden ("BIDN SUX"), Jeeps ("JEEP SUX"), or Lou Gehrig's

---

[19] Appellees' Brief, 21.

disease ("ALS SUX"),[20] but out of bounds when it is directed at Lyndon Baines Johnson ("LBJ SUX"), Fords ("FORD SUX"), or cancer ("CNCR SUX").[21]

Three explanations are possible: (1) BMV censors cannot apply the *Zucco* guidelines consistently because they provide insufficient notice to a person of ordinary intelligence, making them unconstitutionally vague; (2) the guidelines are so loose that they lead to arbitrary results, making them unconstitutionally vague; or (3) the guidelines are so loose that they permit discrimination on the basis of viewpoint, making them unconstitutionally vague. Whatever explanation Appellees fall back on, they cannot avoid the conclusion that the *Zucco* guidelines are void for vagueness.

Nor can they explain how a person of ordinary intelligence is supposed to apply the rule prohibiting speech that is disrespectful "in any language … when read either frontward or backward." They respond that a person of ordinary intelligence understands what it means for a word to be "profane" or "obscene," but they have no explanation how a person of ordinary intelligence is supposed to know if their speech is disrespectful or offensive, when read backward, in Urdu or Malay or Klingon. Nor can they explain why they have permitted hundreds of plates with foreign-language scatology: Is it because the *Zucco* guidelines do not

[20] List of issued plates, ECF #8-2, PageID #3322, 3542, 3287.

[21] List of rejected plates, ECF #2-61, PageID #2346, 2339, 2334.

give ordinary people notice of what they prohibit? Or are its censors fully aware of the additional meaning of those messages and simply choosing to discriminate against only the meanings they disapprove of? Appellees leave the Court to guess.

Because no one—let alone a person of ordinary intelligence—can identify every profane, obscene, offensive, disrespectful, or scatological word or phrase in every language, and because such criteria inevitably lead to arbitrary or discriminatory enforcement, the *Zucco* guidelines remain unconstitutionally vague, and the District Court erred in finding that Appellants were unlikely to prevail on the merits of their vagueness challenge.

### C. Appellees' admission that the *Zucco* guidelines prohibit "disrespectful" or "offensive" speech is an admission of overbreadth.

Though pointing to different authorities, the parties agree that the Court's overbreadth analysis requires it first to construe the language of the *Zucco* guidelines and then to "determine whether the statute prohibits a substantial amount of protected expressive activity."[22] But in defending the overbreadth of the *Zucco* guidelines, Appellees again decline to actually apply this governing standard to the facts of the case—likely because a faithful application can only lead to the conclusion that the guidelines are overbroad.

---

[22] Appellees' Brief, 23.

Appellees admit that *Zucco*'s first prong is properly construed to prohibit any message whose language is "disrespectful" or portrays "offensive" material,[23] classifications so broad that they cannot but sweep up massive amounts of protected expression, especially when compared to the very narrow slice of legitimately unprotected words. *McCollough v. Portland State Univ.*, No. 24-7617, 2026 WL 2124367, at *2 (9th Cir. July 23, 2026) ("[C]rass and disrespectful … language used to communicate a political point may merit First Amendment protection."). Appellees never explain how they can justify prohibiting such a substantial category of speech in the name of rooting out profanity. Instead they change the subject, arguing that protecting the public from offensive speech is a legitimate government interest. But even if that's true, it's irrelevant, as "the assertion of a valid governmental interest 'cannot, in every context, be insulated from all constitutional protections.'" *Packingham v. North Carolina*, 582 U.S. 98, 99 (2017).

So the question in an overbreadth analysis is not whether the restriction pursues a legitimate interest—if it were, virtually every overbreadth case would have affirmed the speech restrictions in question. *See*, *e.g.*, *Packingham* (rejecting speech restriction as overbroad despite legitimate interest in preventing child

---

[23] Appellees' Brief, 21.

molestation); *United States v. Stevens*, 559 U.S. 460 (2010) (rejecting speech restriction as overbroad despite legitimate interest in preventing animal cruelty); *Reno v. Am. C.L. Union*, 521 U.S. 844 (1997) (rejecting speech restriction as overbroad despite legitimate interest in protecting children from offensive materials).

Instead, the question is whether the speech restriction—whatever its purpose—prohibits a substantial amount of protected speech in relation to its plainly legitimate sweep. Appellees do not even attempt to argue that the *Zucco* standards can satisfy that test.

Nor do they attempt to apply that test to the second prong. Instead, they suggest that heckler's vetoes are permissible in a nonpublic forum because avoiding controversy is reasonable and viewpoint neutral. But this analysis simultaneously fails to address the second prong while jumbling a pair of unrelated First Amendment rules, as they are conflating heckler's vetoes with avoidance of controversy: controversy avoidance is a permissible content-based restriction in a nonpublic forum because it restricts speech on controversial *topics*, regardless of the viewpoint, while a heckler's veto is impermissible because it prohibits *viewpoints* the audience opposes, regardless of the topic.

Appellees' defense of the third prong likewise fails. As discussed above, it defends its prohibition on speech that "advocates lawlessness" by pointing to

*Brandenburg*, which allows the state to prohibit speech as incitement only if it "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." But *Zucco* has no language addressing either prong of *Brandenburg*; it prohibits speech regardless of whether it is intended to produce imminent lawless action, and regardless of whether it is likely to actually produce that action. It therefore restricts substantial amounts of "mere advocacy" that remain protected—exactly the approach *Brandenburg* rejected as overbroad.

Because each of *Zucco*'s prongs prohibits a substantial amount of protected expressive activity when compared to its plainly legitimate reach, it is unconstitutionally overbroad, and the District Court erred in finding that Appellants were unlikely to prevail on the merits of their overbreadth challenge.

**III. Appellees' defense of the District Court's refusal to award attorney's fees is not supported by the record.**

Appellees argue the District Court was not required to award attorney's fees (1) because Appellants must "obtain an enforceable judgment" to be a prevailing party entitled to fees, and (2) because Appellant Wonser was not a proper party to the action. While the District Court's initial reaction was to suggest that Mr. Wonser should not have been in the case, it subsequently "accepted" the explanation for his involvement. And it clearly could not have actually maintained the position that he was not a proper party, as it granted Mr. Wonser the relief he

requested.[24] If the Court ordered the relief Mr. Wonser requested, he was a proper party to the case, and his involvement therefore cannot be an extraordinary circumstance justifying the denial of his fees.

## CONCLUSION

The District Court committed reversible error in dismissing the entire action without notice, in refusing to grant injunctive relief, and in refusing to award fees to prevailing parties. Appellees' attempts to cloud the analysis and dodge the facts in the record do nothing to cure those errors. The Court should therefore reverse the District Court's order with instructions to grant the requested injunctive relief, award attorney's fees to the extent Appellants have already prevailed, and allow the case to proceed on its merits.

Respectfully submitted,

*<u>/s/Brian D. Bardwell</u>*

Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave., Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Appellants William Saki, Jeffrey Wonser, and Patrick Corrigan*

---

[24] Order denying Emerg. Mot. for Inj. Pending Appeal, ECF #14, PageID #3957 ("Defendants must approve Wonser's application for a 'MF TUNDRA' vanity plate.").

## CERTIFICATE OF COMPLIANCE

This document contains 6,275 words and therefore complies with Fed. R. App. P. 28(c)'s type-volume limitation of no more than half of the type volume specified in Rule 32(a)(7)(B)(i).

## CERTIFICATE OF SERVICE

I certify that on September 21, 2026, this document was served on opposing counsel as provided by Fed. R. App. P. 25 (c)(2).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Appellants William Saki, Jeffrey Wonser, and Patrick Corrigan*